## No. 10,211.

### MRS. WILLIAM CAREY, WIDOW AND TUTRIX, vs. T. J. SELLERS & CO.

1. To maintain an action by a servant against a master for an injury resulting from defective buildings, premises or appliances, two elements must concur, viz: Fault, or knowledge on the part of the master; innocence of fault or ignorance of the danger on the part of the servant.

2. However gross the fault of the master in subjecting the servant to risk from such causes, yet when the servant knows the defects and danger, and still knowingly and without protest, consents to incur the risk to which he is exposed thereby, he is deemed to assume such risk and to waive any claim for damages against the master for injury resulting therefrom.

3. Held that the evidence establishes knowledge by the servant of the dangerous defects which occasioned the injury and presumed assumption of the risk thereof.

4. Distinctions between this case and that of Faren vs. Sellers, 39 Ann. 1011.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe,* J.

---

*Harry H. Hall* for Plaintiff and Appellant:

1. *Master and Servant.* The risk assumed by the servant is the ordinary hazard incident to the employment, and this is synonymous with unavoidable accident. Wood, Master and

Servant, p. 738. Unless the act is necessarily and inevitably dangerous, no negligence. Do. 739, 681. It is not contributory negligence, *per se*, to engage in a dangerous occupation. Beach, Contrib. Neg. 370; Wood, p. 763; 39 Ann. 1011.

2. The servant has a right to rely upon the care and superior knowledge, information and judgment of the employer. Wood, pp. 749, 751; Thompson, Neg. p. 975. An employee is not bound to inquire as to the latent defects. He has a right to presume that this inquiry has been made by the employer, upon whom the duty devolves, and although the servant may know of the defects, this will not defeat his claim, unless he knows that the defects are dangerous. Wharton, Neg., sec. 215; 39 Ann. 1011.

3. A proprietor who retains control may direct what shall be done without liability for injury to the contractor's servants, provided he does not retain control of the means and method of its accomplishment. Wood, 599; V. 594; V. 7 Ann. 321; 45 Ills. 455; 15 Wall. 649.

4. The master is liable for subjecting the servant, through negligence, to greater risks than those which fairly belong to the employment. Negligence, for which the master is liable, is:

*a.* Negligence in subjecting the servant to the risk of injury from defective buildings or premises;

*b.* Negligence, where the master, or his vice-principal, personally interferes, and either does, or commands the doing of, the act which caused the injury. Thompson, Neg. II, 969; Beach Contrib. Neg. 311, 350; Wood, Mast. and Serv. 676, 837, 699, 843; Wharton, Neg. sec. 205.

The employer may be guilty of personal neglect, connecting itself with the negligence of the contractor, so as to render both liable. Cooley, Torts, p. 548.

5. Whenever the negligence of the master, united to the negligence of a fellow servant, contributes to the injury, the servant injured thereby may recover from the common employer. Beach, Con. Neg. 313; Wharton, Neg. secs. 234, 913; Thomp. Neg. II, 913; 39 Ann. 1011.

6. The owner is bound by the same legal obligation to the servants of the contractor, that exist as between him and his own servant, to keep the premises in safe condition, and is liable to any of the servants of such contractor for injuries resulting to them from defects therein, not under a contract obligation, but by force of the maxim: *Sic utere tuo ut non alienum lædas.* Wood, 699; Wharton, secs. 232, 234, 199 note; Cooley on Torts, p. 549.

7. The servant need only raise reasonable presumption of negligence or fault on defendant's part. The jury may fairly infer from the fact that he had performed similar acts in safety that he was not guilty of negligence in attempting to perform the act which caused the injury. Wood, Master and Servant, p. 777.

*Rice & Armstrong* for Defendants and Appellees.

The opinion of the Court was delivered by

FENNER, J. This case is identical in many respects with that of Faren, tutrix, vs. Sellers, recently decided by us and reported in 39th Ann. p. 1011. It is an action sounding in damages for fatal injury received in the prosecution of the same work of demolishing the main building of the Exposition, by a servant employed in the same manner, the accident happening only two days after that in the case mentioned.

The only points in which this case differs from the former are, first, in the nature of the accident; second, in the character of the evidence.

In Faren's case the injury resulted from the disengagement of a purline, occasioned by the fault of the master, which we held to be a latent defect, entirely unknown to Faren, the existence of which he had no reason to anticipate, of which he received no warning and could not be held to have assumed the risk.

In the present case, the injury was occassioned by the falling of a row of trusses near which Carey was working, which fell, not in consequence of anything done to or upon them at the time, but solely in consequence of the stripping of the building, by defendants, of the rafters or purlines which held the trusses in position. As we held in Faren's case, there is no doubt that this stripping of the building was a gross fault on the part of defendants, and rendered them liable for any injury occasioned thereby to others, unless such other persons had disabled themselves from asserting that liability by their own acts or conduct.

But however gross be the fault of the master in subjecting the servant to the risk of injury from defective buildings, premises or appliances, yet when the servant knows the defects and danger, and still knowingly and without protest consents to incur the risk to which he is exposed thereby, he is deemed to assume such risk and to waive any claim for damages against his master in case of injury. Thompson on Negligence, p. 995; Beach on Cont. Negligence, pp. 350, 368-9-70; Wharton on Negligence, Sec. 214; Cooley on Torts, p. 155; Wood, Master and Servant, pp. 809, 698; Rouer on Railroad, p. 1198; Pierce on Railroad, 379, 80.

This concurrence of the text-writers is supported by a substantial consensus of judicial authority, as well as by the plainest principles of reason and justice.

There is not the slightest conflict between the numerous authorities quoted respectively by counsel for plaintiff and defendant. They simply apply to different subject-matters. The first line of authorities addresses itself to the circumstances and causes which constitute fault on the part of the master, and subject him generally to liability for injury resulting therefrom. The second line deals with particular facts and circumstances which establish such contributory negligence or voluntary assumption of known risk on the part of the servant as makes him responsible for injury to himself and disable him from recourse upon the master. Two elements must concur to maintain the action, viz: fault in the master; innocence and excusable ignorance of the servant.

Now, in the instant case, the evidence conclusively establishes that the weakening of the supports of the trusses and the danger of their

falling at any moment were apparent and known to everyone engaged in the work, and the laborers continued their services with full knowledge of the risk they ran from this particular danger and with consequent voluntary assumption thereof. Numerous trusses had actually fallen in various parts of the building during the progress of the work. Ray, an architect, testifies that, in the condition to which it was reduced, it was a miracle if the building did not fall, and that anyone undertaking to take it down did so at the risk of his life. Lynch, the immediate employer of Carey, says the danger was apparent; that you could feel the building shake with every breeze; that the building was not fit for a mule to go in; that he told Sellers if he didn't strengthen it, he would kill every man in it; that the danger anticipated was the falling of the trusses; that he warned the men to be careful and to go around and not to come under the trusses. Sellers was equally sensible of the danger and warned Lynch of the necessity of bracing the trusses, the controversy between him and Lynch being as to whose duty it was to take this precaution. Hagan, who had been employed in the work, quit because he didn't want to get hurt. Butterfield and Nadal, fellow employees of Carey, state that Lynch repeatedly warned the men of the danger of the work; that the particular danger referred to was the falling of the trusses; that all understood this and knew that trusses had repeatedly fallen. One testifies that, a few minutes before this particular falling occurred, he had gone into that part of the building to get some lumber, but the insecurity and danger were so apparent that he did not fill his order but hastened to get out. A majority of the foregoing witnesses were introduced by plaintiff. There is no countervailing evidence worth considering.

On such testimony, there is no escape from the conclusion of the district judge, that Carey knew, or ought to have known, the danger of the trusses falling, and that by continuing in the employment, with such knowledge, he must be deemed to have assumed the risk of this danger, and to be excluded from claiming damages from the master for injury resulting therefrom. Hulegh vs. R. R., 6 Ann. 497; Satterlee vs. Morgan, 35 Ann. 1166; Wallis vs. R. R., 38 Ann. 159.

We note the contention of the plaintiff that, admitting assumption of the risk of falling trusses, that danger was exaggerated by the fault of the master in not keeping the passages clear of lumber, as he had obligated himself to do in his contract with Lynch, and that Carey would have escaped injury if he had not been intercepted in his flight by a pile of such lumber. But it was evident that the presence of the lumber and the failure to remove it were apparent and patent to every one, and

Carey could not plead ignorance of any addition to his risk occasioned thereby.

In Faren's case the particular danger which occasioned the injury was not anticipated by anyone, the danger which had been anticipated of the falling of the truss, had been obviated by lashing it to the derrick, and did not occur; it did not appear that the loosening of the purlines from the standing trusses had happened in any other instance; and the confidence with which Faren threw his weight upon the purline, as he had been in the habit of doing without harm through the whole progress of the work, established and excused his ignorance of any such danger.

In these respects, the case differed *toto calo* from this, and the master was held responsible for the injury caused by his proven fault.

Judgment affirmed.