No. 11,607.

MRS. VICTORIA · SMART, WIDOW BONER, VS. LOUISIANA ELECTRIC LIGHT COMPANY.

Two linemen were employed in lowering two wires from one arm of a pole to another just below.

One of the two was killed.

No one saw him at the moment.

It was shown that it was safe for a man on a pole, being insulated from the ground, to handle one side of the circuit, but dangerous to touch both sides of the circuit at the same time, without rubber gloves, not defective. .

The lineman's duty, it was shown, was to insulate wires found by him not insulated.

Gloves were sent to the lineman who received the fatal shock by a foreman at the foot of the pole, who was a fellow workman of the lineman killed.

The gloves were old and unsafe.

The testimony is that it was the duty of the lineman to exchange old for new gloves, furnished free of charge, and to inspect them and keep them in good condition.

The employer is not responsible for the dangerous state of the employment, if the danger is known to the employé, and the latter has accepted the employment knowing the attendant risks, and having an opportunity of guarding against them.

The handling of live wires was a necessary part of the business. The testimony shows that the lineman should never touch more than one line at a time.

It was dangerous to come in contact with the two live wires with gloves not in good order and condition.

If the employé received a fatal shock through defects in the appliances left in his care by the employer, and which he was to inspect and keep in good order and condition, there is no ground of action against the employer.

The employé voluntarily assumed the risks of the employment incurred through the defects of the gloves.

APPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

*Percy S. Benedict,* for Plaintiff, Appellant, cites Beach on Crim. Neg. 370; 21 N. E. (N. Y.) 1042; Woods' Prac. Es. 654; 4 U. S. Appeals, 369; 8 S. R. (Ala) 776; Am. and Eng. Ency. of Law, Vol. 2, p. 652; 15 An. 663; 13 An. 397; 1 Greenleaf, 79; Am. and Eng. Ency. of Law, Vol. 14, pp. 869, 871, 909; 44 An. 1043; *Id.* 692; 41 An. 965; Am. and Eng. Ency. of Law, Vol. 16, p. 455.

*Farrar, Jonas & Kruttschnitt* for Defendants, Appellees.

Argued and submitted March 26, 1895.
Opinion handed down April 8, 1895.
Rehearing refused May 20, 1895.

The opinion of the court was delivered by

BREAUX, J. Plaintiff, personally, and as tutrix of her minor children, alleges that the negligence of the defendant company was the cause of her husband's death.

He was a lineman in defendants' company, and was lowering a pair of live wires on a pole at the corner of a street. He and another lineman had been directed to take down two alternating live

wires from their position and place them below the other wires on the pole—that is, from one arm of the pole down to another.

The service is not necessarily dangerous.

The evidence explains that for the purpose of lowering a pair of live wires on a pole the lineman handles one wire at a time, and that he should not handle more than one wire.

The two live wires were near each other, not more than six inches apart.

The pole of wood when dry is an insulator safe to rest on while handling a single wire.

Dry wood is classed fourth amongst the insulators, being preceded by dry air, glass, porcelain and vitrified china.

It is in proof that there is no danger whatever in handling a single wire (one side of a circuit), while upon a wooden pole insulated from the ground, and that a careful lineman will not handle more than one line at a time. This is generally understood by all linemen.

But there is great danger in touching both the live wires and completing a short circuit.

While at work, lowering the lines from one arm of the pole to another just below, Clarence Boner, plaintiff's husband, was not observed at the instant of the accident by those present.

A moment after he had received the fatal shock his body was taken down by his fellow workmen.

When he received the shock he had on rubber gloves.

He was a competent lineman.

A few moments prior to the shock the foreman of the party working at the pole in question directed the two men at work lowering the wire to wear gloves.

He at the same time sent up the gloves to the top of the pole where the men were at work.

The lineman Boner complied with the direction of the foreman.

The other did not; he trusted to his naked hand and received no injury, although he was handling the wire corresponding to that which was being handled by Boner.

The evidence shows that the linemen were to take care of their gloves and keep them in good condition and carry them in their belts for use when needed.

It is also shown that it was left to them to determine when to exchange an old for a new pair.

There are general rules applying especially to the relation of employer and employé; under these rules it is presumed that every person of average intelligence has knowledge of the destructive forces of nature. If the work he performs exposes him to danger from these forces he assumes the risk of the injury.

That every man of experieuce in handling wires when heavily charged with electricity will be taken to understand that he must use great prudence.

The authorities generally announce that if the servant has full and equal knowledge with the master that the appliances used are defective, and each is equally indifferent to the danger, they will stand on a footing of equality as to damages. Boswell, par. 212.

In the first place, however, it is the employer's duty to be careful that his workman be not induced to work under the notion that the appliances are safe, when he knows or has reasonable ground to believe that they are dangerous.

On the other hand, it is the duty of every workman to execute the work with required care, and not expose himself to injury.

These being governing principles of the law of personal injuries, we take up first the charge brought by plaintiff against the defendant that the wires on which her late husband was working should (in electrical *parlance*) have been made dead.

The officer in charge of the operations of the plant testified that any lineman could order the opening of a circuit at the plant, in case of necessity. This testimony is uncontradicted. The record does not disclose that any such necessity was suggested by the lineman.

The principle announced on this point is that the employé who has the opportunity to avoid the danger will have no recourse for the injury. Boswell, p. 340, par. 204.

We are led to infer from the testimony that it is not at all usual to open the circuit and deaden the wires while linemen are lowering wires as in this case.

In so far as relates to the insulation of the wire the plaintiff's complaint is that it was not in proper condition.

The charge would have great force if brought by one not in the service of the defendant, as, for instance, in the case of Clements,

44 An. 692, who was not an employé, but an entire stranger to the defendant company, which was condemned to pay damages.

The testimony here informs us that where a lineman goes on a pole and finds a defectively insulated wire, it is his duty to repair the defect.

The fact that such is the duty of the lineman is not seriously questioned.

The risk (under the circumstances), was one of those assumed by the employé.   Boswell, 352, par. 208.

It is evident that this experienced lineman knew the danger.

We feel justified in the inference that the gloves used were unsafe.

This conclusion about the gloves renders it necessary again to review the facts on this point.

The gloves were furnished by the company without charge.

The gloves furnished by the company were insulating gloves, it is shown, that they had been in use a number of years, and such as are generally used at the present time.   The lineman also had pliers, the handles of which most linemen insulate by winding tapes around them.

Under the company's rules employés were directed to examine daily the appliances furnished them by the company, and in case of defect to return them to the storekeeper.

Plaintiff's insistence is that these rules were not generally known to the linemen.

There is considerable variance in the testimony on the subject.

We believe that the brother of the deceased stated correctly in testifying that the defendant company did everything in its power to bring home to the linemen a knowledge of its rules.

Moreover, in answer to questions propounded, the electrical engineer in charge of the plant testifies:

Q. Whose business was it to inspect those gloves and keep them in good condition?

A. The linemen themselves who used them.   *   *   *

Q. Was there any other method whatever by which the company could find out whether a lineman's pair of gloves was in good condition or not?

A. No, sir, unless he came back with them.

An attempt was made to show that there were times when gloves

could not be had. The preponderance of the evidence is to the contrary.

It is not in evidence that the wires were unusually near one to the other.

As we understand, there was no necessity of coming in contact with these two wires, even with gloves.

But the insistence is that he acted with ordinary care in putting on the gloves as they were sent to him by the foreman. It is not shown that the latter represented the employer; he had no authority to employ and discharge workmen.

His only authority was to direct the work at the pole, and to act as foreman of the laboring party. The gloves were not in his charge. They were picked up by him in the wagon at the time, and his direction to wear them was more advisory than anything else.

The other lineman, to whom, also, gloves were sent at the same time, did not wear them.

We have considered the grounds for a new trial. We do not think that they are sufficient to justify us in remanding the case.

It is not shown that the judge of the lower court exceeded the legal discretion with which he is vested in refusing the new trial.

The suitor must show clearly the discovery since the trial, and that he had used due diligence to procure the necessary evidence. In the absence of negligence, the application must fail.

Judgment affirmed.