NASH, Administratrix, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*February 3 — February 23, 1897.*

*Master and servant: Negligence: Assumption of risk.*

If a brakeman of considerable experience, who has had his attention called to and has read a printed notice issued by the railroad company employing him and conspicuously posted about its depot and yards, warning brakemen that extra care is necessary in coupling cars loaded with lumber which projects beyond the end of the car (a not unusual way of loading them), to prevent the hand, arm, or body from being caught by such lumber, attempts to couple an engine to a freight car so loaded with projecting lumber and is crushed in the attempt, he must be held to have assumed the risk, and no recovery can be had for his death.

APPEAL from a judgment of the circuit court for Juneau county: O. B. WYMAN, Circuit Judge. *Reversed.*

The action is brought to recover damages for the death of Michael Nash. The deceased was engaged in the employment of brakeman on defendant's road. He was killed while attempting to couple a flat car loaded with timber to an engine. The timber was so loaded that it projected over the body of the car about even with the draft iron, which was about ten inches below the floor of the car. The engine was backing down slowly towards the car. As it neared the car,

deceased got off the engine from the rear end of the tender, adjusted the link in the draft iron of the tender, walked back to the car and adjusted the pin in the draft iron of the car, stepped out to the side of the track, and gave a signal to the engineer. The safe way of making such a coupling is to stoop, so that the body shall be below the timber. When the engine had approached sufficiently near to the car, the deceased passed in to make the coupling. He did not stoop, but stood erect, and was crushed and killed. The deceased was twenty-four years old. He had been engaged in this employment for the defendant for about two months. He had been in similar employment elsewhere before. Cars loaded in the manner in which this one was loaded were frequent in defendant's trains, and it was a busy road. His attention had been specially called to and he had read a printed notice which was posted on all of the cabooses of freight trains, yard masters' offices, switchmen's shanties, and other places frequented by brakemen in the course of their employment, which notified them that extra care must be used to prevent the hand, arm, or body from being caught "between the lumber, rails, or other material which projects beyond the end of the car." The defendant asked the direction of a verdict for the defendant, which was denied. There was a general verdict and judgment for the plaintiff, from which this appeal is taken.

For the appellant there was a brief by *George R. Peck* and *H. H. Field*, and oral argument by *Mr. Field*.

For the respondent there was a brief by *Winsor & Winsor*, and oral argument by *H. Winsor*.

Newman, J. The claim of the plaintiff is stated in the brief as follows: "Respondent rests upon the statement that the death of Nash was brought about by the unusual and dangerous manner of loading the lumber car over the end, in conjunction, possibly, with the fact of the short draw-

head on the rear of the tender." The defendant's contention is that the death was from one of the ordinary risks of the employment. That is the only question. Sometimes questions become clear by a recurrence to elementary principles. None other are involved here. The fact that the deceased was killed while engaged in coupling cars for the defendant does not, alone, make the defendant liable for his death. It is liable only in case it failed to perform some duty which it owed to the deceased. The deceased, by undertaking the employment, assumed all the ordinary risks of the employment, as the business was, in fact, carried on by the defendant, so far as they were obvious to persons of ordinary intelligence, judgment, and discretion, or could be discovered by due attention. The defendant is not liable unless it exposed him to unusual dangers. The testimony does not sustain the plaintiff's claim that the manner in which this car was loaded was unusual. On the contrary, it abundantly establishes the fact that that is a very common manner of loading with lumber or timber, and that cars so loaded were frequent in defendant's trains during the time when the deceased was so employed as brakeman. The deceased must have been familiar with them. Besides, his attention had been specially called to a printed notice warning brakemen of the danger, in coupling such cars, of getting the limbs or body caught "between the lumber, rails, or other material which projects beyond the end of the car." Besides, the danger was obvious to men of ordinary intelligence, judgment, and discretion. He could not have been ignorant of the manner in which the car was loaded, for that was obvious to his senses. Besides, it was necessarily forced upon his attention while setting the pin in the drawhead, which was under the projecting timber. Clearly, this was one of the risks which he assumed when he entered upon the employment. It was not negligence to put cars loaded in that manner into defendant's trains.

When the employee assents to perform the duty assigned to him, and incurs the dangers to which he will be exposed thereby, having sufficient intelligence, judgment, and discretion to enable him to comprehend them, it is not a question whether such service might, with reasonable care and expense, have been made more safe. His assent has dispensed with the performance on the part of the employer of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no ground of complaint, even if reasonable precautions have been neglected. *Casey v. C., St. P., M. & O. R. Co.* 90 Wis. 113, and cases cited; *Holt v. C., M. & St. P. R. Co.* 94 Wis. 596; *Showalter v. Fairbanks, Morse & Co.* 88 Wis. 376; *Erdman v. Illinois Steel Co., ante,* p. 6. The adult employee is presumed to understand and comprehend the ordinary risks of his employment. *Jones v. Florence Mining Co.* 66 Wis. 268–282; *Holt v. C., M. & St. P. R. Co., supra.*

But it is said that the drawhead on the tender was shorter by several inches than the drawhead of ordinary freight cars, and that that might have misled him. It is said that he might not have known this fact, or have been temporarily forgetful of it. It is suggested that, with seven inches more of space between the end of the timber and the tender, he might have come from the collision in safety, as if he could speculate upon such chances without the imputation of negligence. Doubtless he was, for the moment, oblivious of the danger attending the performance of the act he was about to perform. It cannot be assumed that he intended suicide. His forgetfulness was his own misfortune, rather than the defendant's fault. It was one of the risks of the employment which he had assumed. There is no conflict in the testimony. The inference proper to be drawn from the testimony is not in doubt. It is not shown that the defendant failed in any duty which it owed to the deceased. The death was due to one of the ordinary risks of the employ-

ment.   A verdict for the defendant should have been directed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.