HENCKE, Respondent, vs. ELLIS and another, Appellants.

*May 1 — May 21, 1901.*

*Master and servant: Personal injuries: Negligence: Contributory negligence: Assumption of risk.*

1. A complaint alleged, among other things, that plaintiff, a carpenter, was employed by defendants to repair a roof; that while standing in the gutter at the edge of the roof, doing the work with one hand and holding on to the casing of a dormer window with the other, the casing broke, causing him to fall to the ground, and that

the unsound condition of the casing was unknown to plaintiff, and could not have become known to him by the exercise of ordinary care. *Held*, that plaintiff assumed the risk of the employment, and that allegations of the complaint in regard to the assurance of safety by the master, a command by him to proceed with the work in the particular way described, and the necessity for the plaintiff to work in order to support himself and family, were immaterial.

2. Allegations of the complaint in such case to the effect that the master ought to have known that the casing was insecure before sending the servant to do the work in its vicinity; that the servant relied on the master's duty in that respect without any information that the master had tested the safety of the casing; that the servant was assured that it was safe to do the work in the way directed if he exercised ordinary care, and that he exercised such care in using the casing for support as he did, the insufficiency thereof, for such purpose, being so latent as not to be discoverable by any inspection he was legally bound to make, show that the servant assumed the risk of discovering the defect in the casing, if it was discoverable by the exercise of ordinary care, and also the risk of there being a defect not so discoverable.

3. In such case, an allegation that the master made a careful examination of the building in respect to its safety to sustain the weight of a person while engaged in working upon or around it, and knew or ought to have known that the casing was liable not to stand the strain put upon it when so used by the servant, does not allege that the master knew of the unsafe casing.

4. To maintain an action by a servant against a master for an injury resulting from defective buildings, premises, or appliances, two elements must concur, viz: fault or knowledge on the part of the master, and innocence of fault, or ignorance of the danger, on the part of the servant.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Appeal from an order of the superior court of Milwaukee county overruling a demurrer to a complaint. The action was to recover compensation for a personal injury. The complaint was to the following effect: Plaintiff, a carpenter by trade, was employed by defendants — who were contractors for work of repairing buildings — to do work of that kind upon a dwelling house. Prior thereto defendants

carefully examined such dwelling house, and knew or ought to have known the age and condition thereof as regards soundness and strength to bear up the weight of a person while working around and upon it, and especially knew or ought to have known of the unsafe condition of the particular dormer window casing which gave way and was the immediate cause of the injury plaintiff received. A part of the work to be done consisted of mending the roof near a dormer window. There were three ways of reaching the place where such work was required to be done, one being to go upon the roof from the window and stand in the gutter at the edge of the roof and do the work with one hand while holding onto the window casing with the other. That was the most dangerous way of proceeding with the work, but was the one selected by defendants. Plaintiff requested defendants to furnish him with appliances or help to enable him to do the work by one of the safer methods, but they negligently refused to do so and insisted upon his proceeding by the particular method described or not at all, assuring him that such way would be safe if he exercised ordinary care. Because of the necessities of plaintiff, which required him to earn wages for the support of himself and family, and the assurance of defendants as to the safety of the method of doing the work described, he proceeded in that way; and while at work, standing in the gutter at the edge of the roof, and holding onto the casing of the dormer window with one hand and working with the other, using all reasonable care to avoid being injured, the casing suddenly broke or pulled off, causing him to fall a distance of some twenty-five feet to and upon the frozen ground, whereby he was severely injured. The unsound and unsafe condition of the casing was not known to plaintiff, nor could it have been known to him by the exercise of ordinary care. It had existed for a long time prior to the accident and was known to defendants or ought to have been discovered by them at

the time of their careful examination of the building, made prior to directing plaintiff to proceed with the work.

The demurrer was upon the ground that the complaint failed to state facts sufficient to constitute a cause of action.

The cause was submitted for the appellants on the brief of *Van Dyke & Van Dyke & Carter*, and for the respondent on that of *Geo. L. Williams.*

MARSHALL, J. The doctrine that it is the duty of the master to furnish his servant with a reasonably safe working place, and reasonably safe tools and appliances with which to do his work, is discussed at considerable length by respondent's counsel in support of the complaint, but it does not seem that such doctrine applies to the facts alleged. It is elementary that where the dangers of a servant's working place are as open to his observation and knowledge as to his employer's,— having regard to the duty of each to exercise ordinary care, and the *quantum* of care that may be reasonably expected of each, considering the kind of work to be performed,— the servant assumes the risk thereof. The work respondent was employed to do was that of a specialist, the kind he was trained to do. He was not obliged to assume the risk of doing it in the way dictated, or excused for proceeding in that way, so as to hold appellants responsible for the safety of the casing, merely because they directed him to so proceed or assured him that it was safe to do so if he exercised ordinary care. An assurance of safety in such a case is not material except where the person giving the assurance must be presumed to have better judgment or information than the assured, so that the latter may reasonably rely thereon instead of on his own judgment. *Showalter v. Fairbanks, M. & Co.* 88 Wis. 376; *Nash v. C., M. & St. P. R. Co.* 95 Wis. 327; *Larsson v. McClure,* 95 Wis. 533. So, leaving out the allegations that defendants examined the building and knew or ought to have known of the condition

of the casing,— which we will treat later,— no one could reasonably say but that respondent, as a specialist at work of the kind he was employed to do, must be put upon an equal plane with those who employed him, as regards all the dangers ordinarily incident thereto or discoverable by the exercise of ordinary care. In the *Showalter Case* there was a command that the servant proceed to do the work, coupled with an assurance of safety, but it was said that, since he was a man of mature years, free to decline to proceed as directed or at all, and as well informed as the master as to whether the work was dangerous or not, such command and assurance were immaterial to the question of whether the latter was guilty of actionable negligence. In *Larsson v. McClure* the court said: " The plaintiff was familiar with the kind of work he was required to perform, and had had considerable experience in that line. . . . He chose to continue work under the circumstances, instead of declining the service, and it is entirely well settled that he must be held to have assumed the risk or danger, so far as it was open for his observation," upon the principle that when danger is alike open to the observation of all, the master and servant are upon an equality and the master is not liable for an injury resulting from the employment as the work is required to be done. We must hold that those elements in the complaint in regard to the assurance of safety and command to proceed with the work in the particular way described, and the necessity for respondent to work in order to support himself and family, are immaterial. They do not even aid in making out a cause of action against appellants.

It clearly appears by the complaint that the alleged defect in the casing was not apparent by observation; that it was latent. The allegation that appellants knew or ought to have known of it means no more than that, because they made a careful examination of the building in respect to its

safety to sustain the weight of a person while engaged in working upon or around it, they ought to have discovered that the casing was liable not to stand the strain that might be put upon it by a person while making repairs and using it as a hand-hold by which to steady himself. The allegation falls far short of stating that appellants knew of the unsafe casing. Unless the conclusion pleaded, that they ought to have known of the danger notwithstanding its latent character, merely because they examined the casing, and notwithstanding such a discovery could not have been made by plaintiff by the exercise of ordinary care, is warranted, clearly, no cause of action is stated in the complaint. In determining the amount of care required by respondent in order to come up to the legal standard under the circumstances, it must be noted that, while the complaint states, in effect, that appellants examined the casing as regards its safety, before respondent was directed to proceed, it is not alleged that they informed respondent thereof. Nothing appears to indicate more than that respondent proceeded in the particular way alleged, upon the general assurance that it was a safe way if he exercised ordinary care. If it appeared that appellants informed him that they had examined the casing and that it was safe, or that he knew that they had made such examination, and that he used it as a hand-hold on the faith thereof, a different question would be presented. As the complaint stands we find nothing therein that relieved respondent from the duty of examining the casing for himself as to its ability to stand the strain it was liable to be subjected to, before commencing his work. He well knew that the work was dangerous in itself, and that he must necessarily use great caution to prevent falling from the building. No one knew that better than he did. In the absence of any circumstance indicating to him that the safety of the casing had been tested by appellants for the use to which he was liable to subject it, it was

clearly his duty to test it and discover its condition if ordinary care would do that, if duty to make such a test devolved upon any one. If the exercise of such care would not have resulted in discovering the danger which caused the mischief, then actionable negligence cannot be predicated on the failure of appellants to make the discovery, and respondent's injury must be attributed to pure accident. In *Carey v. Sellers*, 41 La. Ann. 500, the true rule governing cases of this kind is very tersely stated in the syllabus, which is a correct summary of the discussion of the subject and conclusion of the court found in the opinion:

"To maintain an action by a servant against a master for an injury resulting from defective buildings, premises, or appliances, two elements must concur, viz.: fault or knowledge on the part of the master; innocence of fault, or ignorance of the danger, on the part of the servant."

Our conclusion is that the complaint fails to charge more than that defendants ought to have known that the window casing was insecure before sending plaintiff to do the work in the vicinity thereof, where he was liable to take hold of it for support; that he relied on their duty in that respect without any information that they had tested the safety of the casing, merely because they assured him that it was safe to do the work in the way directed if he exercised ordinary care; that he did exercise such care in using the casing for support as he did, because the insufficiency thereof for such purpose was so latent as not to be discoverable by any inspection which he was legally bound to make. The idea seems to be that the assurance given respondent absolved him from the duty of paying any particular attention to the safety of the casing before using it for support, while it seems that, in view of the dangerous character of the work, such assurance, coupled with the condition that he must use ordinary care, clearly suggested that he should, for himself, inspect the casing, reasonably, as to its suitableness for the use he was to put it to. Instead of

Hencke vs. Ellis and another.

being lulled into a feeling of security by the conduct of appellants, he was stimulated to exercise the care that one should exercise in such a situation when acting upon his own judgment.   In that view, clearly, the complaint fails to state a cause of action, but on the contrary shows that respondent assumed the risk of doing the work as he did, including that of discovering the defect in the casing if it was discoverable by the exercise of ordinary care in that regard, and the risk of there being a defect not so discoverable.   If such care would not have disclosed the danger to respondent, it would not have disclosed it to appellants, and the result is not attributable to the fault of any one.   If they were guilty of actionable negligence in failing to make the discovery and warn respondent of it, he was as guilty of contributory negligence in not making such discovery.

The rule requiring the master to furnish his servant with a reasonably safe working place, calls only for a working place free from all dangers which a person in the circumstances of the master, in the exercise of ordinary care, ought to know of, and which, under the circumstances, the servant, in the exercise of ordinary care, is not legally chargeable with knowledge of.   All other dangers which the servant subjects himself to in the line of his employment, either knowingly or ignorantly, he assumes the risk of, whether they are such dangers as are ordinarily incident to the performance of such service, or such dangers as are incident to the work as the master chooses to conduct it of which the servant's means of knowledge are equal to those of the master, having regard to the *quantum* of care which the latter is legally bound to exercise for the safety of the former and that which he is legally bound to exercise for his own safety.   *Jones v. Sutherland*, 91 Wis. 587; *Erdman v. Illinois S. Co.* 95 Wis. 6, 10; *Guinard v. Knapp-Stout & Co. Company*, 95 Wis. 482, 486; *Nash v. C., M. & St. P. R. Co.* 95 Wis. 327.

It follows from what has been said that respondent was, on the facts alleged, required to exercise at least as much care in examining the casing as appellants, and that, giving the allegations of the complaint the most favorable construction for him which they will reasonably bear, the trouble that rendered the working place unsafe was a defect which required some test other than that which ordinary care, under the circumstances, would suggest in order to discover it. Such being the case, no breach of duty on defendants' part is shown in that they failed to discover it. On the contrary the claim of actionable negligence is clearly repelled. It follows that the demurrer was improperly overruled.

*By the Court.*— The order appealed from is reversed, and the cause remanded with directions to enter an order sustaining the demurrer and for further proceedings according to law.