No. 14,095.

MRS. MARY L. MERCHANT ET ALS. VS. THE PINE WOODS LUMBER CO.

107    463
121    513

## SYLLABUS.

1. The employer is not responsible in damages to a workman or to his legal representatives for injuries suffered from a danger that was plain and open to view and easily avoided with ordinary care, and that the workman was well acquainted with.

2. The risk of injury from such a danger is assumed by the workman as incident to his employment.

**A** PPEAL from the Second Judicial District, Parish of Webster—
*Watkins, J.*

*Stewart & Stewart,* for Plaintiffs, Appellees.

*Wise & Herndon, L. K. Watkins,* and *Henry Moore,* for Defendant,
Appellant.

The opinion of the court was delivered by

PROVOSTY, J.    James L. Merchant, while employed at the sawmill of
the defendant company, met with an accident resulting in his death;
and his widow, for herself and as guardian of her minor child, issue of
her marriage with the deceased, brings this action in damages, alleging
that the accident occurred through the fault of defendant in putting
the deceased to work in a dangerous place without warning him of the
danger.

The defense is that the danger, such as it was, was in plain, open
view and easily avoided by due care; and that what risk there was, was
assumed by the deceased as incident to his employment.

For conveying lumber from the mill to the dry-house there is at de-
fendant's sawmill a structure resembling somewhat a railroad bridge
and built after the same fashion, that is, of open work of heavy timbers,
mainly trestles and cross-beams.    This structure is about twenty feet
high and one hundred and fifty to two hundred feet long; and, viewed
from the side, appears to have—in the language of the witnesses—two
"decks," one at the top, and one about midway from the ground.    Stand-
ing on this lower "deck," a person finds himself in a passageway ex-
tending the entire length of the structure and four feet wide by five
to six feet high.    On each side he has the open, bridge-like work.    Over-
head he has a floor, and above that the carrier, or moving platform,
running the entire length of the structure.    At his feet, along the
passageway, he has an iron shaft; and on one side of this shaft, at
right angles to it, he has at every forty feet a short cross-shaft; this
cross-shaft ends in a beveled cogwheel, which fits into a similar beveled
cogwheel affixed to the longitudinal shaft.    Affixed to this cross-shaft,
about nine inches from the cogwheel, is a sprocket wheel, by means of
which and of a chain band the motive power is transmitted to the live
rollers that are under and that propel the carrier overhead.    By way of
surface to walk on he has alongside of the longitudinal shaft, and

resting on the same cross-beams as it, a twelve-inch plank on one side, and a six by eight timber on the other side. The cross-shafts rest on this timber.

It having been found advisable to remove the floor described as being just below the carrier and overhead of a person standing on the lower "deck," the deceased was assigned to the work. He was to saw off the boards composing the floor, and might do the work from a position on the top of the structure, sawing down, or by standing on the lower deck and sawing up; he chose, or was told to adopt, the latter method; and he had sawed to a distance of six feet nine inches when the accident happened. His leg got caught at or just below the knee between the cogwheels and was crushed and mangled up to the body.

No one saw the accident. The man in charge of the machinery, feeling a jar and hearing a scream, stopped the machinery. He and the engineer, Tom Tramwell, were the first to reach the deceased. They found him held fast in the cogwheels, and apparently sitting on them. "My God," exclaimed Tramwell, "how did you come to get here?" "I stepped backward and it caught me," answered the deceased. The casualty occurred at about eleven o'clock in the morning, and the deceased died at about nine o'clock of the evening of the same day.

At the thought of a fellow man being subjected to such excrutiating pain one grows faint; and i nthe wake of this feeling comes a feeling of sympathey for his widowed wife and orphaned child; but, though we hold the defendant to the strictest legal accountability, the plaintiff cannot recover. To decide for plaintiff we should have to adopt the doctrine that every workman who gets hurt by dangerous machinery while doing his work, is entitled to damages from his employer. The rule of law is very different; it requires that the employer should have been at fault, and not merely that he should have employed the workman to work near dangerous machinery.

The testimony is about evenly balanced as to whether the work which deceased was required to do was more dangerous than any other employment close to dangerous machinery. For our part, we do not see why these cogwheels of twelve to fourteen inches diameter and seven inches thickness or this revolving shaft, or this circling chain band, or the combination of all three, should be considered necessarily dangerous, when there was ample space to stand out of their reach; nor can we see why a twelve-inch plank, or a six or eight-inch timber, should not be secure footing to a workman, even when in the act of sawing overhead.

The case is not that of a green hand exposed to unsuspected danger; the deceased was 22 to 25 years old, in the full possession of all his faculties, was perfectly familiar with the ins and outs of the place—having run the carrier during three days, and oiled the machinery, including the fatal cogs, several times, and spent the day before that of the accident in cleaning out the sawdust and trash from under the carrier; and the work was carpenter's work, which kind of work he had been doing about the premises; and the cogs were in plain, open view.

Also it is notable that when the accident happened the deceased had already sawed to a point eight feet nine inches away from the cogs, so that to get into the cogs he had to leave off sawing and step to them. Therefore the direct immediate cause of the accident was not the difficulty of sawing without getting into the cogs, but the thoughtlessness of the deceased who put his limb or his trousers within the bite of the cogs.

There was danger—the event has but too cruelly demonstrated that fact—none, however, but such as was plainly visible and known to the deceased, and such as he assumed the risk of. Smith vs. Seellers, 40 Ann. 527; Dandie vs. South. Pac. R. R., 42 Ann. 686.

It is therefore ordered, adjudged and decreed that the verdict of the jury and the judgment of the lower court in this case bet set aside and that this case be dismissed at the costs of the plaintiff in both courts.

Rehearing refused.