(38 South. 580.)

No. 15,503.

WELTON v. GENESEE LUMBER CO., Limited.*

(April 24, 1905.)

INJURY TO EMPLOYÉ—ASSUMPTION OF RISK—PLEADING—EXCEPTIONS.

1. The employé had knowledge of the danger incident to the crossing over a weak bridge. Others avoided the danger. He remained in the place of danger, although the danger was specially mentioned to him. Under a well-established rule, he must be held to have assumed the risk he met at the moment of the fatal accident.

2. Plaintiff sued defendant as a partnership. It was a corporation, and not a partnership. This objection on the ground stated, urged by way of exception, is fatal to the action.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert Raymond Reid, Judge.

Action by Martha E. Welton against the Genesee Lumber Company, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

Sentell & Harvard and Alfred Wood Spiller, for appellant. Stephen Dudley Ellis, James Legendre, and Edward Rightor, for appellee.

BREAUX, C. J. This is a suit for damages.

Mrs. Welton, widow of Frank Blake Welton and tutrix of her minor children, issue

───────

*Rehearing denied May 22, 1905.

of her marriage with Frank Blake Welton, brought this action to recover $25,000 damages for the death of her husband, about the 12th of March, 1903, caused, she avers, by injuries received while employed by the defendant company as engineer.

The facts were briefly these:

The defendants are the owners of a sawmill and lumber factory. They own and operate a railroad to carry logs to their mill, and handle other freight. They were using the railroad bridge or trestle across the Tangipahoa river, over which their log trains crossed. The bridge was about 15 feet above the water of that stream.

Frank B. Welton, the husband of plaintiff, was the engineer of the log train of defendants. They attempted to cross this bridge. The log train consisted of 10 cars pushed by an engine. Just prior to the attempt to cross, the bridge was examined; it did not appear entirely safe, and steps were taken to avoid danger.

The dangerous condition of the bridge appears to have been known by the general manager present and by other employés, including the plaintiff. They came to the bridge with the train. The cars were pushed across the bridge by the engine. The engine itself was stopped on arriving at the bridge; it was then that the bridge was examined by the general manager, and a talk was had over the situation between the late husband of plaintiff and the manager. The bridge was weak; there was evidently some risk in attempting to cross.

When the attempt was made to cross the heavy engine—heavier than the unloaded cars—the bridge gave way. The stringers of the bridge broke, and the engine fell into the water. The water was high. Its depth at the bridge was about 15 feet. The engine went in with it, but not the empty cars on the remaining part of the bridge unbroken.

The husband of the defendant in the crash jumped overboard into the river. He was injured in the fall into the river, and a short time thereafter was drowned.

The engine at the time was moving quite slowly. There was no one on the engine except the deceased. The fireman stepped off, and it seems to have been understood, by the direction of the manager, that no one should remain on the engine while crossing the bridge, and that, none the less, deceased remained thereon. Sullivan, who was working for defendants, a witness for plaintiff, testified that the fireman said to the deceased: "Now, Frank (the deceased), you get on the engine and give it motion and get out, and I will control it on the other side." (Parentheses ours.) The reply of the deceased was, "All right." This testimony is corroborated by the fireman. It appears to have been understood that the move to cross would be cautiously executed, and that no one would remain on the locomotive. This, we gather from the testimony, was the understanding of all the witnesses, except plaintiff, who, as a witness on her own behalf, said that the manager called on her a short time after the death of her husband and stated that he thought the bridge was safe; that her husband went back in the engine, and that he, the manager, went out on the middle of the bridge to watch the weak place while it went across; that he said to her that he did not know that her husband was on the engine when it started across. In another part of the testimony she testified that the manager said to her that he "flagged her husband to come." The manager did not testify, and no reason is given for his failure to testify.

The defendant is a company, limited, created under the laws of Michigan. Plaintiff avers that defendant is a partnership. Defendants deny that they are partners, and excepted on that ground.

These are about all the facts of any moment in deciding the questions involved.

The case was tried the first time before a

jury, which returned a verdict for plaintiff, and awarded damages in the sum of $7,500. The trial judge granted a new trial. On the second trial the jury was waived. The court held that plaintiff's demand was not made out. It was rejected.

We have reason to infer from the testimony that the deceased knew of the defects and danger in this attempt to cross the bridge. Without objection, he consented to take the risk.

We infer from the evidence that deceased had knowledge of the danger.

The movement of the train whilst attempting to cross shows that apprehension was felt by those in charge, from manager to fireman. It was not a safe bridge. The engineer's attempt to cross whilst he was on the locomotive should not have been made. The fireman sought safety by alighting, a step which was suggestive of the necessity of avoiding the danger. This deceased did not choose to do, as we understand the testimony. He remained on the engine, although there was danger of which he had knowledge. Under a well-settled principle we are constrained to hold that it, in effect, and substantially, was a waiver of any claim for possible damages.

Both parties, the manager and the engineer, had knowledge of the defect, and, by remaining as he did when he might have stepped off, he certainly must be held under the rule to have assumed the risk of the injury. Elliott, § 1311.

The authorities are not unanimous, it is true. But there is an element in this case of consent to put the engine in motion, and to remain thereon despite the danger, that renders the application of the said rule imperative.

This brings us to a consideration of defendant's exception noted in our statement of the facts, setting forth that defendant is not a partnership, but a corporation.

The issue was tendered by defendant, and no successful attempt was made by plaintiff to meet it.

There is no proof of partnership. The letter head introduced, and a copy of a deed admitted in evidence at plaintiff's instance, do not sustain the averment that defendant is a partnership as alleged.

From either point of view stated above, plaintiff cannot obtain a judgment. We are constrained to deny the demand.

The judgment appealed from is affirmed.