(46 South. 608.)

No. 16,890.

RAMSEY v. TREMONT LUMBER CO.

(May 25, 1908.)

1. MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

An employé, part of whose employment was to see to everything being kept in order about a sawmill, cannot complain that the lantern by which he was doing his work was smoky and gave but a dim light. If such was the case, the fault was his own.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 710–714.]

2. SAME—WARNING BY MASTER.

Where the danger is manifest, and incident to the work, and the employé is of sufficient age and intelligence to appreciate the risk, the employer is not required to give any special warning, as, for instance, that the hands or the clothing of the employé may get caught in the moving machinery at which he is employed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 310.]

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Lincoln; Robert Brooks Dawkins, Judge.

Action by Robert P. Ramsey against the Tremont Lumber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Allen Byber Hundley and Clayton, Hawthorn & Atkinson, for appellant. Hudson, Potts & Bernstein and Stubbs, Russell & Theus, for appellee.

PROVOSTY, J. Plaintiff was employed as assistant millwright in defendant's sawmill. His duties were to—

"do general work around the mill, keep the mill in order, and do whatever was to be done during the operation of the mill at night, and, I suppose, he was to help repair machinery, and such like as that."

Plaintiff was questioned, and he answered as follows:

"Q. Do I understand you did whatever the foreman ordered you to do? A. Whatever came up to do. If I found it first, I did whatever I saw to do; and if he found it, and told me to go do it, I would go."

Plaintiff was in his twenty-fifth year, and had been a farmer, but for the past two years had been a carpenter by trade. On the third night of his employment he suffered the injury, for which he brings this suit in damages.

The sawdust, slabs, and other refuse from the saw fall into a trough, and are carried along in the trough by a chain which runs at the bottom of the trough, and are dumped outside of the mill into a fire over which the chain passes. This chain is about 3 inches in diameter, and is made of ¾-inch iron. Its links are sufficiently long and broad to admit of a lug 6 inches wide and 1 inch thick being inserted in them. These lugs are of oak, and are 8 to 10 inches long. At one end they are of double thickness; that is to say, 2 inches thick. After they have been inserted in the chain, the part which has passed through the chain is reinforced by another piece of oak of equal size, which is nailed to it. The piece thus afterwards added is called a "cleat"; its function being to strengthen the lug and at the same time make it fast in the chain. These lugs are constantly being torn or broken off in their encounter with the heavy material carried in the trough, or are burned while passing over the fire, and have to be replaced. Stoppages of the mill are taken advantage of for doing this work; but these stoppages do not suffice for keeping the chain replenished, and, the lugs have, as a rule, to be inserted in the chain while it is motion. It moves very slowly, taking a quarter of an hour for one revolution; its length being about 500 feet. For inserting the lugs the workman stands at a place where the chain is out of the trough. It comes from his right and passes before him,

about 1 foot from him and about breast high, and goes to his left upon and over a sprocket wheel. This wheel is within 2½ or 3 feet of him—dangerously close. It has a diameter of 2½ to 3 feet. After having gone over this wheel, and turned with it, the chain on its return passes again by the workman. How high above the floor it moves on its return the record does not show; but it passes over a broad iron tension wheel right in front of the workman, and this gives him his opportunity to nail the cleat. For doing so he stops the chain as the lug is passing over the iron tension wheel. This he can do instantly by pulling a rope which hangs within easy reach. The lug then rests upon the iron tension wheel, ready for the nailing. After having nailed the cleat he again sets the chain in motion.

The lug is inserted in the chain horizontally, and the workman may insert it, either by a movement direct from his body towards the chain, or by passing the hand which holds the lug over or under the chain, and then by a movement towards his body. The direct method does not bring the workman so close to the moving chain, and is therefore slightly less dangerous. It has, however, the disadvantage that the end of the lug upon which the cleat has to be nailed is then at the other side of the chain, and the situation is slightly less convenient for nailing; and this inconvenience, it is said, is sometimes increased by the upper chain sagging and coming somewhat in the way of the nailer. The difference between the two methods is, however, very slight, and both are used indifferently.

Plaintiff alone has any personal knowledge of how he came to be caught in the sprocket wheel. His statement on the witness stand varies somewhat from his allegation in his petition. In his petition he says that:

"The shirt sleeve on his left arm was caught by the sprocket wheel."

In his testimony he says:

"When I put my arm there to put the lug in, it caught my arm, and pulled my arm into the sprocket wheel."

The fault which the plaintiff charges the defendant company with is that, knowing he was inexperienced, it placed him to do dangerous work without instructions or warning, and in that it furnished only an insufficient light to do the work in, whereby the doing of the work was made more dangerous, and, finally, in that the work was that of two persons, and not of one.

On the trial it was shown that the mill is lighted by electricity, and that the place where plaintiff was working was usually lighted in that manner, but that on the night of the accident this light was not burning, and the only light was a lantern, which had been burning all night, and was more or less smoked, and gave but a dim light. The accident occurred at 4 o'clock in the morning. No explanation is given why the electric light at this particular part of the mill was not burning that night.

A complete answer to this ground is that plaintiff himself, as assistant millwright, was the person whose duty it was to rectify anything that was wrong with the light, and that nothing shows that he could not have done so, or is not alone responsible for its not having been done. Under these circumstances, plainly, he could not recover even if the accident had been result of the defectiveness of the light. Smart v. Louisiana Electric Light Co., 47 La. Ann. 870, 17 South. 346; Bolling v. Kirby & Bros., 90 Ala. 220, 7 South. 914, 24 Am. St. Rep. 789; Illinois Cent. R. Co. v. Jewell, 46 Ill. 99, 92 Am. Dec. 240; Kerwin v. People, 96 Ill. 206; Conway v. Chicago G. W. Ry. Co., 103 Iowa, 373, 72 N. W. 543; Johnson v. Hovey, 98 Mich. 343, 57 N. W. 172; Peppett v. Michigan Cent. R. Co., 119 Mich. 640, 78 N. W. 900. But we doubt very much that it was. Others had

done the work with safety by the same light, and plaintiff himself had done it. We rather incline to believe, with defendant's learned counsel, that, unaccustomed to night work, plaintiff on this his third night of work, it being near morning, had become drowsy.

The contention that the work was that of two men, and not of one, is not supported by the testimony and is not pressed in the brief; nor can the court see how two men could co-operate in the work in question. True, an assistant might pull the rope to stop the chain, and do whatever was necessary to set the chain again in motion; but, while the assistant would be doing this, the workman himself would be idle, for in the time which the chain takes to go to the sprocket wheel and around it and back again there is ample time in which to get ready for nailing the cleat and for pulling the rope to stop the chain, and after the nailing is done the workman can take his own time for again setting the chain in motion.

In place of this abandoned contention, the learned counsel for plaintiff argue that the workman should have been instructed to stop the chain for inserting the lug, in the same way that he stops it for nailing the cleat. This new contention does not impress the court. It was not set forth in the petition, nor made an issue on the trial, and seems to have come to counsel for plaintiff as an afterthought. The learned counsel for defendant say—and probably would have proved, had the point been made an issue—that the interval between such a stop and the stop which has to be made for nailing the cleat would be too short, and there would be danger of too great an accumulation in the trough of the rubbish which falls constantly from the saw. But, whatever may have been the reason for requiring the lugs to be inserted while the chain was in motion, such was the requirement, and plaintiff knew

it when he accepted the employment and undertook to do the work. He therefore assumed the risk, and he could not recover, even if there was no special reason for not stopping the chain. 26 Cyc. 1155.

Remains the allegation of inexperience and absence of instructions or warning. The testimony is to the effect that the millwright stood with plaintiff at the place where the workman has to stand for inserting the lugs, and inserted several to show him how it was done, until plaintiff said he could do it, and that the millwright warned plaintiff of the dangerous character of the work and of the necessity of being careful. Plaintiff says he was not told of the danger from the sprocket wheel, and he is corroborated by his witness McDaniel; but this witness had previously made a different statement, and the testimony of the millwright, a disinterested witness (no longer in the employ of the defendant company), seems to be so perfectly fair throughout that the court is disposed to accept it, to the effect that plaintiff was warned.

Indeed, the danger from this sprocket wheel was so obvious that any special reference to it would seem to have been unnecessary. Plaintiff himself frankly admits that it was evident to anybody of ordinary intelligence.

But it is contended that plaintiff should have been specifically warned that his sleeve might get caught on a broken lug, or in a link of the chain, or by a nail on one of the lugs, and drawn upon the sprocket wheel.

In his petition plaintiff says that his sleeve was caught by the sprocket wheel; in his testimony he says it was caught by the lug. The danger of being caught on the sprocket wheel was one which he acknowledges was evident to any man of ordinary intelligence. As to being caught by the lug, he does not explain, and we do not see, how such a thing could be. One of his witnesses suggests that his sleeve might have been caught by a nail on one of the broken lugs. There is no evidence, however, that such was the case.

Our view of the matter is that the situation was dangerous, but not more so than a dozen other situations about the sawmill, and that there was no danger which was not evident to a person of ordinary intelligence, or against which any special warning was necessary.

The lugs were not put in nearer than three links, or say 21 inches, apart, and were frequently much further apart, and very little time was required for inserting them, and the chain moved slowly.

"Q. How long would it take to insert a lug in the link? A. Why, just a moment in sticking it in there; just that quick."

Of course, if, after inserting the lug, the workman left his sleeve in the way, there was danger of the oncoming lug catching it, especially if partially broken or otherwise jagged edged, or having a protruding nail; but such danger would be evident, and not differing in character from that incident to proximity to all and every kind of moving machinery. Plaintiff had spent from two to three hours on each of the two preceding nights at this same work, and it is next to impossible that he should not have observed all the details of a situation so simple as a chain moving before him, with lugs in it, some of them in a more or less damaged condition, and going upon a sprocket wheel close to him at his left. The sole dangers from such a situation were to let his hand follow the chain upon the sprocket wheel, or let any part of his clothing get caught, either on the sprocket wheel or on the chain. These dangers were obvious to a man of ordinary intelligence, and plaintiff must be held to have assumed them by consenting to do the work. Welton v. Lumber Co., 114 La. 842, 38 South. 580; Neider v. I. C. R. R., 108 La. 158, 32 South. 366, citing Carey v.

Sellers, 41 La. Ann. 500, 6 South. 813; Jenkins v. Maginnis Cotton Mills, 25 South. 643, 51 La. Ann. 1017; McKinney v. McNeely, 108 La. 27, 32 South. 199; Merchant v. Pine Lumber Co. 107 La. 463, 31 South. 878; Moffet v. Koch, 106 La. 371, 31 South. 40. The employer is not required to describe to the workman, or warn him against, every possible way in which he or his clothing may get caught in the moving machinery at which he is employed.

"Where the general danger is known, or ought to be known, to the servant, particular details, which merely enhance the danger, need not be known." Dresser on Employers' Liability, § 97.

Judgment affirmed.