O’NIELL, J.
The plaintiff sued for $20,-000 damages for personal injuries suffered in an accident that happened while he was in the employ of the defendant company. He obtained a verdict and judgment for $14,500, from which the defendant prosecutes this appeal. In answer to the appeal, the plaintiff prays that the amount of the judgment be increased to $20,000.
The plaintiff was one of the helpers in a drilling crew, composed of a driller and four helpers, who, at the time of the accident, were engaged in what they called knocking down pipe. That operation, as we understand it, consisted in unscrewing and separating into its original lengths the pipe that was taken out of a well. As the 4-inch pipe was drawn out of the well, it was separated into lengths of three or four joints each and left standing in the derrick. The rotary machine was then removed from over the 6-inch easing to a point about 3 feet from it, and an 8-inch hole was drilled to a depth of 60 or 80 feet, into which the pipe was lowered so that the men could reach the joints and unscrew them. The joints of the pipe were screwed so tight together that it was necessary at times to strike the sleeve or collar with a sledge hammer to loosen the threads. The plaintiff was thus engaged, hitting the collar on the 4-inch pipe with a 12-pound sledge hammer, when his foot slipped off of the muddy plank on which he was standing, and he fell into the machinery. His leg was caught between the sprocket wheel and chain that drove the rotary machine, and was so mangled that it had to be amputated near the hip joint.
It appears that, when the rotary machine was removed from over the well or casing, it left an opening in the derrick floor, 18 inches wide and 5 feet long; across which opening a 12-inch plank was thrown. The plaintiff was standing with one foot, or perhaps both feet, on the plank, while striking the pipe sleeve or collar with the sledge hammer.
He contends that the accident was the direct and immediate result of negligence on the part of the defendant company, in the following particulars, viz.:
First. That he was furnished an unsafe tool for the work required of him; that he should have been furnished a hammer weighing only 4 or 5 pounds; that the 12-pound hammer was so heavy that it increased the danger of his slipping on the wet and muddy derrick floor, or from the plank on which he stood.
Second. That the place at which he was required to stand while using the hammer was an unsafe place, because the plank on which he was instructed to stand was wet and muddy and slippery, and the hole in the der *535 rick floor was left open and unguarded on each side of the plank.
Third. That the engineer in charge of the drilling crew was not where he should have been, and was not properly discharging his duties at the time of the accident, and that, if he had been at his post of duty and had been properly discharging his duties, he would have seen the accident in time to prevent it or minimize the danger.
The defense is that whatever danger there was in the work in which the plaintiff was engaged was apparent to any man of ordinary intelligence and prudence, and that the plaintiff was an experienced workman and assumed the risks incident to his employment.
The evidence shows that the plaintiff had had more than two years’ experience at the work in which he was engaged at the time of the accident, and was as capable of observing and guarding against the dangers of the employment as was any man on the job, or as any man of superior authority could have been. It is not contended that there was any hidden danger in the employment, or that there was need of any special instruction as to the safe and proper manner of doing the work.
It is assumed, in the argument for the plaintiff, that the handling of such a heavy hammer as the 12-pound sledge caused him to lose his equilibrium; but, strange to say, there is no evidence in the record to support that argument. There is no testimony even to the effect that the handling of a 12-pound sledge is inclined to throw a man off his balance. If that element of danger in the use of a 12-pound sledge hammer is a matter of such simple philosophy and common sense as to warrant our taking judicial cognizance of it, it must have been apparent to the plaintiff, who had the advantage of experience in the occupation.
.[1, 2] Tire rule that the master must furnish his servant with safe tools with which to do his work has little or no application, to such a simple tool as a sledge hammer. As a general rule, the master is not liable for injury to the servant as a result of his using a defective simple tool. The reason is that the danger incident to a defect in a simple tool is an obvious danger, of which the servant assumes the risk, especially if he has had experience in the use of such tools. A better illustration could hardly be given than that of the use of a sledge hammer having no other defect than that it was heavier than was necessary for the work in hand. On this subject see Labatt on Master and Servant, vol. 3, § 924A, p. 2476, and section 1043, p. 2760, and the decisions there cited.
The evidence shows that there were smaller hammers on the-derrick floor, but that the handles were broken. It does not appear, however, that the plaintiff asked for a smaller hammer or requested that new handles be supplied to the hammers that were furnished. On the contrary, it appears that the helpers in the drilling crew attended to keeping the hammers supplied with handles, and could have procured them at any time. It also appears that the men in charge of the oil field and of the drilling operations preferred that the helpers use smaller hammers for loosening the pipe threads, because the large hammers were apt to break the collars or dent the pipe; but the helpers preferred to use the large hammers because they were more effective in loosening the pipe threads. Hence we have no assurance that the plaintiff would have used one of the smaller hammers if the handles had not been broken.
[3] That there was an opening in the derrick floor, I%x5 feet in size, and that the 12-inch plank thrown across the hole was wet and muddy- and slippery, was an apparent danger of which the plaintiff needed no special warning. The accident happened at about 1:30 in the daytime. The evidence *537 shows that the floors of derricks used in the drilling of oil wells are usually wet and muddy and slippery, and that it is not customary to cover the opening in the floor after removing the rotary machine away from the hole. The plaintiff’s experience of more than two years 'should have given him ample knowledge of those obvious dangers. The evidence does not convince us that the plaintiff was required to stand over the hole in the derrick floor to do the work in which he was engaged when the accident happened. If it was necessary or more convenient for him to stand there to strike the pipe sleeve, there was nothing to prevent his putting more than one plank over the hole. At any rate, nobody having greater authority in the premises had any better knowledge of the danger of working over or near the hole in the floor than the plaintiff had. The master is not responsible for the dangerous situation of the servant, if the danger was known to the servant or was obvious to any one of ordinary intelligence, and the servant accepted the employment knowing the danger and with ample opportunity to guard against it. See Smith v. Sellars & Co., 40 La. Ann. 527, 4 South. 333; Tillotson v. T. & P. Ry. Co., 44 La. Ann. 95, 10 South. 400; Smart v. La. Electric Light Co., 47 La. Ann. 869, 17 South. 346; Stucke v. Railroad Co., 50 La. Ann. 195, 23 South. 342; James v. Rapides Lbr. Co., 50 La. Ann. 728, 23 South. 469, 44 L. R. A. 33; Jenkins v. Maginnis Cotton Mills, 51 La. Ann. 1011, 25 South. 643; McKinney v. McNeely & Brown, 108 La. 30, 32 South. 199; Ramsey v. Tremont Lbr. Co., 121 La. 506, 46 South. 608; Alexander v. Davis Bros. Lbr. Co., 124 La. 1, 49 South. 724; McCants v. Tremont Lbr. Co., 128 La. 487, 54 South. 967.
The allegation that the engineer was not at his post of duty or attending to his business at the time of the accident is contradicted by the evidence. He was standing within reach of the reverse lever, but had turned his head only for an instant to turn out a torch, when the plaintiff fell. Without having to move from his position, the engineer grabbed the reverse lever and reversed the engine immediately. There was no negligence on his part.
We are constrained to hold that the defendant company is not liable for the unfortunate accident that befell the plaintiff.
The defendant paid the plaintiff’s wages in full for 11 months after the accident, paid the doctors’ bills, sanitarium fees, and the cost of an artificial limb, expending, in all, $1,635.85, as a matter o'f charity, for which expenditures the defendant prayed for judgment in reconvention. The district judge maintained the plaintiff’s exception of no cause of action to the l'econventional demand, and we think the ruling was correct, as there was no allegation that the expenditures were not gratuitous. The plaintiff’s counsel contends that the defendant’s paying the plaintiff for the time he lost as a result of the accident, paying his doctors’ bills, sanitarium charges, etc., was an acknowledgment of the defendant’s liability. We do not think it was. In the case of Mattise v. Consumers’ Ice Mfg. Co., 46 La. Ann. 1535, 16 South. 400, 49 Am. St. Rep. 356, it was said that the payment by the defendant company of the funeral expenses of a servant who was killed while in the employ of the defendant company reflected credit upon the latter, and should not prejudice the rights of either party to the suit for damages for the death of the employé. We adhere to that humane doctrine.
The judgment appealed from is annulled, and it is ordered that the plaintiff’s demand he rejected, and his suit dismissed at his cost.