HAMLIN, Justice:
In the exercise of our supervisory jurisdiction we directed certiorari to the Court of Appeal, Fourth Circuit, for review of its judgment which affirmed the judgment of the trial court. After considering the verdict of the jury, the law,, and the evidence, the trial court rendered judgment: (a) in favor of plaintiff, Louise M. Bur-, dine, Wife of Henry Eschmann (as sur *821 viving spouse),[1] (hereinafter referred to as either Louise M. Burdine or Mrs. Eschmann), and against the defendants, R. Kirk Moyer and American Indemnity Company, in the sum of $45,000.00, together with interest and costs, jointly and in solido; (b) in favor of defendants, Adele C. Uddo, Mary C. Hayden, Frances C. Long, and Elma C. Scheffler, and against Louise M. Burdine, dismissing her suit as to these defendants at her-costs; and (c) in favor of intervenor, General Fire and Casualty Company, and against Louise M. Burdine, in the sum of $16,166.48.[2] Art. VII, Sec. 11, La. Const, of 1921; 252 La. 267, 210 So.2d 508; La.App., 208 So.2d 405.
The Court of Appeal stated that the sole question presented for its determination was the liability vel non of R. Kirk Moyer, quantum not being at issue. Our consideration, however, will be directed primarily to the alleged personal negligence of defendant R. Kirk Moyer and the finding of the jury, the trial court, and the Court of Appeal, that such existed at the time of the accident. Because we shall hereinafter find that R. Kirk Moyer was not personally negligent, and such finding will necessitate the reversing of a jury verdict, we shall quote and narrate a great amount of the testimony of record.
Suit was instituted by Henry J. Eschmann and Louise M. Burdine, Wife of Henry Eschmann, on June 22, 1965, for damages allegedly resulting from injuries suffered by Mrs. Eschmann from a fall down a flight of stairs on October 19, 1964, at her place of employment as a dictaphonetypist on the premises 1552 Washington Avenue, New Orleans, Louisiana, leased by R. Kirk Moyer Agency, Inc. from the Heirs of Mr. and Mrs. Peter A. Chopin. Named as defendants were R. Kirk Moyer; R. Kirk Moyer Agency, Inc.; General Fire & Casualty Company; Louisiana Underwriters of American Indemnity of Galveston, Texas; Mrs. Elma C. Scheffler, Administratrix of the Estate of Mrs. Peter A. Chopin; and ABC Insurance Company.
On October 19, 1965, the trial court maintained an exception of no cause of action filed September 20, 1965, by General Fire and Casualty Company and R. Kirk Moyer Agency, Inc. The exception was based on the fact that as an employee of R. Kirk Moyer Agency, Inc., Mrs. Eschmann had not elected to be excluded from coverage under the Louisiana Workmen’s Compensation Act and since the occurrence of the accident had been receiving workmen’s compensation and medical benefits from her *823 employer’s workmen’s compensation insurer, General Fire and Casualty Company.[3]
The Heirs of Mr. and Mrs. Peter A. Chopin, Adele C. Uddo, Mary C. Hayden, Frances C. Long, and Elma C. Scheffler, and their insurer, Pacific Insurance Company of New York, were substituted as defendants in place of the Administratrix of the Chopin Estate.
On November 18, 1965, General Fire and Casualty Company filed an intervention wherein it alleged it had been paying Louise M. Burdine workmen’s compensation and medical expenses and prayed that it be paid by preference out of any judgment rendered in the matter. On April 12, 1967, James H. Drury, attorney for R. Kirk Moyer, R. Kirk Moyer Agency, Inc., and American Indemnity Company; William L. Von Hoene, attorney for Henry J. Eschmann and Louise M. Burdine; David L. Stone, attorney for Elma C. Scheffler, Adele C. Uddo, Elizabeth C. Samuel, Mary C. Hayden, Frances C. Long, and Pacific Insurance Company of New York; and C. Gordon Johnson, Jr. of the firm of Porteous & Johnson, attorneys for General Fire and Casualty Company, entered into a stipulation whereby it was agreed that in the event of judgment in favor of plaintiff and against defendants, or any of them, intervenor was entitled to be paid by preference out of said judgment the amount of $16,166.48. The judgment of the trial court, supra, awarded intervenor the amount stipulated.
On March 3, 1967, Louise M. Burdine filed a supplemental and amended petition wherein she named R. Kirk Moyer, American Indemnity Company, Adele C. Uddo, Elizabeth C. Samuel, Mary C. Hayden, Frances C. Long, Elma C. Scheffler, and the Pacific Insurance Company of New York as defendants. She alleged in part:
“Said stairway was used for the purpose of entering and leaving the upper or second floor offices of the premises and, as well as not having adequate lighting, the area at the head of the stairs was not properly maintained. Petitioner avers that the defendants, R. Kirk Moyer, Adele C. Uddo, Elizabeth C. Samuel, Mary C. Hayden, Frances C. Long and Elma May C. Scheffler, owed her a duty of furnishing a safe means of ingress and egress to the leased premises and knew *825 or should have known of the unsafe and deteriorated conditions of said stairway and particularly the area at the head of the stairs. Further, Defendants failed to remedy the condition within a reasonable period of time.
“Petitioner, Louise M. Eschmann, avers that the proximate cause of the said accident and subsequent injuries was the negligent failure of Defendants, Adele C. Uddo, Elizabeth C. Samuel, Mary C. Hayden, Frances C. Long and Elma May C. Scheffler, to maintain the premises in a safe condition and/or the negligent failure of R. Kirk Moyer and R. Kirk Moyer Agency, Inc. to provide her with a safe place to work.
“Defendant, R. Kirk Moyer, was aware of the unsafe condition existing at the head of the stairs of the premises located at 1552 Washington Avenue and personally failed to take any action as President of R. Kirk Moyer Agency, Inc. to correct the condition which has existed for over a period of several months. Furthermore, because Defendant, R. Kirk Moyer, used said stairway daily, he knew or should have known of the dangerous condition of the stairway from his own observations.”
In answer to Louise M. Burdine’s supplemental petition, R. Kirk Moyer and his insurer denied negligence on Moyer’s part; alternatively, they averred the contributory negligence of Louise M. Burdine.
The case was tried before a jury which returned a nine to three verdict in favor of Louise M. Burdine and against R. Kirk Moyer and American Indemnity in the sum of $45,000.00, jointly and in solido. Its verdict was also in favor of the Chopin Heirs and against Louise M. Burdine. The trial court rendered the judgment supra, in accordance with the jury’s verdict.
R. Kirk Moyer and American Indemnity Company appealed. Louise M. Burdine neither appealed nor answered the appeal. As stated supra, the Court of Appeal affirmed the judgment of the trial court, finding, “The record contains ample evidence to support the jury’s finding, implicit in its verdict, that plaintiff’s fall was due to the defective condition of the carpet in the vestibule and that Mr. Moyer was thoroughly cognizant of its condition and was personally negligent in not correcting it. We find no manifest error in such finding.” (Emphasis ours.)
R. Kirk Moyer and his insurer, American Indemnity Company, were granted this certiorari; they assign the following errors to the judgment of the Court of Appeal:
“1. The Court of Appeal erred in holding that the plaintiff-appellee, Mrs. Eschmann, had not assumed the risk of injury and was not guilty of contributory negligence.
*827 “2. The Court of Appeal erred in holding that the doctrine of momentary forgetfulness applied in this case.
“3. The Court of Appeal erred in finding that R. Kirk Moyer, being thoroughly cognizant of the alleged defective condition of the carpet, in question and being the President of R. Kirk Moyer Agency, Inc., the corporation occupying the premises where said carpet was situated, as lessee, was personally negligent in not correcting said condition.”
' Relators urge that the judgment of the Court of Appeal should be reversed, and that R. Kirk Moyer and American Indemnity Company should be absolved from any liability to Louise M. Burdine and intervenor, General Fire and Casualty Company.
Counsel for Louise M. Burdine contend that the jury reached a proper verdict; that the verdict was well founded in fact; and, that the judgment in her favor should be affirmed.
Counsel for intervenor orally stated in this Court that it was his contention that the judgment of the Court of Appeal should be affirmed.
We have examined the exhibits filed in evidence and find .that the Court of Appeal correctly described the physical entrance to R. Kirk Moyer Agency, Inc. as follows:
“Access to the offices of the agency was gained by means of a carpeted stairway which led to the second floor from the Washington Avenue entrance of the building. This stairway ended at a small landing or vestibule measuring approximately 4' x 4'. The entrance door to the main office of the agency opened onto this vestibule directly opposite the head of the stairs: The door to another office of the agency which led to the lunch room opened onto the vestibule to the left of the stairs as one ascended. A strip of carpeting ran from the head of the stairs to the main office door. This strip did not cover the entire vestibule so that there was approximately a foot of bare floor between the side of the strip and the door leading to the lunch room.”
Because of our determination, we do not find it necessary to discuss the alleged assumption of the risk by Mrs. Eschmann and her alleged contributory negligence and momentary forgetfulness.
We have read the lengthy testimony of record, over three hundred and fifty pages, and we find that Mrs. Eschmann worked for R. Kirk Moyer Agency, Inc. from January, 1962 until August, 1962, at which time she became ill. She returned to work in November, 1962, and continued to work until the time of the accident. At the time of trial, she testified that she was fifty-one years of age and weighed approxi *829 mately one hundred and ninety-five pounds; she said she weighed more at the time of the accident. Her version of the accident is as follows:
“A. Well, I was typing this letter, and it was one of the personal, confidential ones, and always when I went to lunch I would cut my typewriter off, and if it was an ordinary letter I’d leave it in the typewriter until I came back. If it was something confidential, I would take it out of the typewriter and turn it upside down so that nobody passing could glance over and read it. So, this day I was typing one of these letters, and the girls — we went in two groups to lunch. Sue didn’t go on that group, she sat at the front. Now, I don’t know if she was there when I left or not, but her place was in the front, unless she was in the back at the files; and the girls had come on this lunchtime, and I got up and I cut my typewriter off and I started behind the last one out; and they had gone in and closed that door, the glass door, and we were told to keep the doors closed on account of the air conditioning getting out into the hall. So, I closed the wooden door and had just — you can’t run because it’s only about two or three steps from one door to the other one, and I had reached over and taken my couple of steps, and I had my hand on the claims door when I remembered that letter was still in my typewriter, so I turned around to come back and open that door; and I had one hand trying to get to the door, I hadn’t got to that door yet, and one foot caught in the rug and I saw I was falling. I grapped [grabbed] for the railing and I didn’t make it. The other foot kept going on over, and I went down behind it, and I remember screaming or trying to scream. I don’t know if anybody heard me, but then that’s all I know.
“Q. And you tumbled head first down the landing?
“A. Yes sir.”
Mrs. Eschmann further testified:
“At the landing, no sir, I wasn’t looking down. I would say I was more apt to be looking at the door knob to open the door, to go into the glass — the office with the glass door. * * * Well, then my foot caught on the frayed edges, and — or the bump, and then my other foot slipped over the edge with the rug. The rug went, and I went with it.”
When asked whether she knew the rug was loose, Mrs. Eschmann stated that all of the rugs were loose; that the stairway rug was loose all the way down. Her testimony with respect to having voiced a complaint is as follows:
“Q. Did you complain to this man, Mr. Kirk Moyer?
“A. I told him about the hole.
"Q. What hole?
*831 “A. The hole where I broke the heel of my shoe, but I don’t know if I told him about this landing or not.
í|í 5|í íjí ífc ‡
"Q. But you didn’t tell him anything being wrong with this carpet, either, about being loose?
“A. I don’t think I told him that. I think I told Mrs. Schekeler. I told somebody.”
At the time of trial, R. Kirk Moyer Agency, Inc. was no longer in business Mr. Moyer testified that the corporation,, originally known as Sinclair, Inc., was formed in 1938; that in about August, 1939, after purchasing the agency from his father-in-law, he became president and changed its name. Mr. Moyer’s wife owned 98% of the shares of stock, Mr. Moyer owned one share, and P. B. Erato, Jr. owned the remaining share. Mr. Moyer further testified that he had charge of the agency, but that he delegated some authority and held directors and shareholders meetings. At the time of the accident, the approximately fifteen persons employed entered the front door and went up the stairs to the landing where Mrs. Eschmann fell. Mr. Moyer testified that all the nap had worn off the carpet, but that there was nothing basically wrong with it. When asked about the responsibility for the carpet, he stated:
“Well, of course, the carpet didn’t belong to us, I don’t suppose — I think had it deteriorated we would have requested our landlords to replace it, but it had not deteriorated and therefore we just maintained it. I had my porters with specific instructions to always make sure that it was tight. If I would come in the morning, and maybe after weeks suddenly find that maybe the third step from the bottom had a tack loose, probably three or four or five [or] six others that were still holding, and one loose, I would call it to his attention, so it was generally kept tight.”
When questioned about Mrs. Eschmann’s action just prior to the accident, Mr. Moyer testified:
“Q. Did you have occasion to observe her as she went through this door, about the noon hour ?
“A. I certainly did, yes.
“Q. What did you see, Mr. Moyer?
“A. Well, she was — she was almost running, she was going so fast.
“Q. Running where?
“A. From her desk. The girls in the kitchen had apparently announced that they would go to lunch or something of the sort, and then they had gone ahead of jher and she was going, obviously she was going out to the kitchenette for lunch.
*833 “Q. All right, sir, continue; what did you next see or hear ?
“A. Well, after she, as I say, she was going very rapidly, almost running.”
When questioned about his actions immediately after the accident and his observation of the rug at the top of the stair landing, Mr. Moyer testified:
“Q. After she fell, Mr. Moyer, did you have occasion to go back and check the top of the landing ?
“A. Yes, after she was in the ambulance on the way to the hospital I did go back and check, and may I demonstrate what I did? I was so concerned about this, I couldn’t imagine what had happened, so I went out with my heel like this (standing and demonstrating), and I was trying to find something loose, and there wasn’t anything loose on it, right after the accident.
“Q. But you did find a lump in the rug, didn’t you, Mr. Moyer ?
“A. No — well, yes and no. There was padding under the rug, and there was perhaps a little — there was a little congregation, you might say, of the padding at one little spot there, yes. However, we were trying to figure out what on earth happened, and we just couldn’t perceive that anybody could have fallen over such a little thing.
* :{i * * * *
“A. There was a little — perhaps a little hump, very small, where the material, you know, the — what do you call it — the padding under the rug had perhaps caused just a very slight little rise there, yes.
“Q. But it was bad enough that you thought to tell Earl Gray to correct it?
“A. Yes, I suppose I did.
“Q. And the thought ran through your mind at that time that someone could have tripped over this lump?
“A. No, the thought in my mind, I still didn’t see how anybody could have —it was general maintenance as far as I was concerned, any instructions to him, but I don’t see how anyone could have tripped over that.”
Earl Gray, porter, testified that he did not witness the accident. He went to work on the afternoon of the accident and looked at the carpet on the stairs and on the landing. He was asked: “What did you see? In other words, what I’m trying to find out, to use a common expression, did you find anything wrong with the carpet?” He responded, “I didn’t find anything wrong, no.”
There were no witnesses to the accident. Immediately thereafter, a number of Mrs. Eschmann’s fellow employees rushed to the scene; they observed the landing and *835 stairs and later testified in these proceedings.
Mrs. Suzanne Kappesser testified that there was a small lump in the rug at the landing, between a quarter of an inch and a half-inch high.
Mrs. Inez Gibbons, who was not working for R. Kirk Moyer Agency, Inc. at the time of the accident but had previously worked for the agency, testified that the carpet was worn and on occasions was loose.
Peter J. O’Reilly, Jr. stated that the carpet was secured, and he “felt” that the carpet was in good repair and safe. He said there was a slight rise, but that it had been there for years; that whenever a loose spot was noticed in the twenty-five or thirty feet of carpeting, the porter was requested to tack it.
Earl Gray, supra, testified that he did tack the carpet when such tacking was needed.
Kathryn M. Vreeland said the carpet was secure and tacked down, and that she had not observed any lumps.
Lillian J. West, when asked whether she examined or looked at the rug, said: “Yes, I did. Right after I stood there, I looked around and I put my foot around to see if I could feel anything protruding, but everything was — I didn’t see anything that would make anybody trip or slip, or anything like that.” She further stated that the rug was tacked.
Marilyn West did not recall seeing anything wrong with the carpet.
Olivette Micholet stated that she did not notice anything wrong with the carpet.
Dora Cardenia testified that the employees examined the carpet during the afternoon of the day of the accident. Her testimony is as follows:
“Q. On that day did you have occasion to look down at the carpet?
“A. Yes, after it happened I did.
“Q. And about how long after was it, after the accident was it that you looked down there?
“A. I couldn’t tell exactly how long after, but that same afternoon we examined the carpet.
“Q. What did you find on examining it?
“A. That particular area was not torn, and it was — the edges were nailed down, it was no raw edges.
“Q. Excuse me, I didn’t mean to cut you off. Did you find anything that indicated to you what might have been the cause of her fall ?
“A. No sir, I didn’t.
“Q. Did you see anything, to use a common expression, which might be termed wrong, or any defects?
*837 “A. I didn’t, no sir.
“Q. And you examined the carpet?
“A. Yes.”
 A reading of the testimony, particularly that above quoted and narrated, constrains us to conclude that the carpet on the landing of the vestibule where Mrs. Eschmann fell was not so defective as to constitute a trap or hazard. “Thus, a ‘hazard’ is a danger or risk lurking in a situation or place. This definition of ‘hazard’ is in common use, as one may speak of a sharp curve in a highway as a hazard; of steep steps as a hazard; and that life itself is a hazard.” Service Welding & Mach. Co. v. Michigan Mutual Liability Co., 6 Cir., 311 F.2d 612, 617. Admitting that the carpet contained a slight rise — it was so slight as not to be seen by some of the employees of R. Kirk Moyer Agency, Inc.— we do not find that it was of such a size as to make the rug dangerous. Although the rug was old, the nap being worn, we do not find that its condition was such as to precipitate Mrs. Eschmann’s fall.
Mrs. Eschmann contends that because of his alleged personal negligence supra, her immediate superior, R. Kirk Moyer, is personally liable to her in tort.
LSA-R.S. 23:13 provides that:
“Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. * * *” See, 56 C.J.S. Master and Servant § 214, p. 922; 35 Am.Jur., Master and Servant, Sec. 104, p. 532; Wiltz v. Esso Standard Oil Company, La.App., 126 So.2d 649; White v. Nutriline Milling Co., 133 La. 870, 63 So. 385; Carey v. Sellers, 41 La.Ann. 500, 6 So. 813. Cf. Fontenot v. Raftery, La. App., 14 So.2d 77.
The evidence of record affirms the fact that Mr. Moyer knew that the carpeting had to be secure; his porter was instructed by him to inspect the carpet and make sure that no dangerous looseness existed. The evidence discloses that this was done. The photographs submitted in evidence reflect that the office space occupied by R. Kirk Moyer Agency, Inc. was not located in a new modern office building; it was not spacious nor luxurious. Under such circumstances, we conclude that Mrs. Eschmann’s place of employment was in accordance with the accepted and approved practice in such or similar places *839 of employment. Because of our previous finding with respect to the condition of the rug in the vestibule, we do not find that Mr. Moyer was under a duty to warn Mrs. Eschmann to be careful when traversing the vestibule. We do not find that it was incumbent upon him to recommend to his corporation that it buy and replace old rugs that had lost their nap. We find no personal negligence on Mr. Moyer’s part. He and his insurer are therefore not personally liable in tort to Mrs. Eschmann for the injuries suffered.
All parties admit that Mrs. Eschmann slipped and fell down the stairs, suffering severe head and bodily injuries. However, only Mrs. Eschmann testified that the cause of her fall was the physical condition of the vestibule rug. In substance, the testimony of the other witnesses with respect to the rug’s condition contradicts that of Mrs. Eschmann. Therefore, we conclude that the weight of the testimony does not support Mrs. Eschmann’s contentions.
For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside, insofar as it affirmed the judgment of the trial court in favor of Louise M. Burdine Eschmann and against the defendants R. Kirk Moyer and American Indemnity Company in the sum of $45,000.00, together with interest and costs, jointly and in solido, and plaintiff’s suit as to them is dismissed at her costs.
It is further ordered that the judgment of the Court of Appeal affirming the judgment of the trial court in favor of intervenor, General Fire and Casualty Company, and against plaintiff, Louise M. Bur-dine Eschmann, in the sum of $16,144.48, is reversed and set aside at intervenor’s costs.

. Henry X Eschmann died on October 19, 1966, during the pendency of this suit. Louise M. Burdine, Wife of Henry X Eschmann, as surviving spouse, was substituted as party plaintiff and permitted to assert the claim on behalf of the community in these proceedings.

. This part of the judgment will be hereinafter discussed.

. LSA-R.S. 23:1032 provides: “The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.” See, Meche v. Farmers Drier & Storage Company, La.App., 193 So.2d 807, writ refused, 250 La. 369, 195 So.2d 644, wherein the Court stated: “An employer or principal subject to liability for workmen’s compensation benefits cannot be held liable in tort to an injured employee or his survivors, since under LSA-R.S. 23:1032 the compensation remedy is then exclusive. * * * ”