DOMENGEAUX, Judge
(dissenting),
I find myself unable to agree with the majority in this case and cannot join my learned brothers in finding the jury’s verdict to be manifestly erroneous. In an effort to present the reasons prompting me to take this stand, I shall examine the specifications of error alleged by the defendants.
Their first specification of error, that the trial judge erred in failing to submit the issue of negligence on the part of the dismissed defendants to the jury, is without merit. The prejudicial possibilities of such action are clear and were previously discussed by this court in the case of Broussard v. State Farm Mutual Automobile Insurance Company, 188 So.2d 111, though in another light. I agree with the trial judge that had evidence of plaintiffs’ earlier compromise with other defendants been placed before the jury the plaintiffs’ case would very likely have been severely prejudiced.
The defendants’ second specification of error is directed at the trial court’s refusal to permit them to amend, during the trial, *277 a paragraph in their answer wherein they admitted the weight of the vessel being lifted to have been approximately 106,000 lbs. The trial judge considered the matter as not being at issue in view of the judicial admission found in the answer.
Defendants argue that they should have been allowed to amend their answer because of the results of a calculation of the weight of the vessel, made by Pittsburg Plate Glass, which indicated that it was considerably less than the figure admitted. Plaintiffs counter that they relied on the admitted vessel weight in preparing their case and that to allow amendment of the answer would have raised a new issue which they were unprepared to meet and therefore cause them great prejudice.
The question of whether an amendment will be allowed during the trial is one which addresses itself to the court’s discretion. LSA-C.C.P. Arts. 1151, 1154; Wallace v. Hanover Insurance Company of New York, La.App., 164 So.2d 111; writ refused 246 La. 598, 165 So.2d 486. The record in this case shows that the plaintiffs filed an amended and supplemental petition alleging the weight to be 106,000 lbs. on September 7, 1967, nearly one year after the suit was filed. The defendants did not answer admitting that to be the weight until August 22, 1968. They then sought to amend their answer during the trial in October, 1971. Clearly, therefore, defendants had ample time to calculate the true weight of the vessel and to plead it without resorting to their eleventh-hour request for leave to amend their answer. Under these circumstances I cannot say that the trial judge abused his discretion in denying their request. Accordingly, the offer of proof regarding the weight of the vessel should be disregarded.
Next, defendants complain of the finding of negligence proximately causing the accident on their part, urging that there was no breach of a duty owed by them to the deceased. Additionally, they cite as error on the judge’s part his failure to find John McGraw, III, negligent, and error on the jury’s part their failure to find Jesse Canter guilty of contributory negligence. I treat all of these specifications of error together.
The evidence shows that Industrial Construction Company was operating under a modified “lump sum” contract with Pittsburgh Plate Glass, i. e., Pittsburgh Plate Glass paid a fixed fee for the work to be performed, including, inter alia, equipment, but reimbursed Industrial for labor expenses. All engineering services for the job were to be provided by Pittsburgh Plate Glass through the defendants herein. Pittsburgh Plate Glass was to furnish all drawings, specifications, etc., “ . as may be necessary for the proper execution of the work.” With these respective responsibilities in mind, I turn now to an examination of the circumstances surrounding the accident, as I understand them.
The vessel in question, a product still measuring approximately 100 feet in length, and designated as C-205, had arrived at the Pittsburgh Plate Glass plant some weeks before by rail. Stamped on it was a plaque which stated its “empty” weight to be 92,487 pounds. It was lifted from the freight car by a Koehring 50-ton crane and a Lorraine 115-ton crane, and transported some 200 to 300 feet, to where it would be dressed out and installed. For this operation the Koehring crane had a 40-foot boom and the Lorraine a 50-foot boom. George Frenzel testified that defendant Clifford Stacy, a field engineer for Pittsburgh Plate Glass, told him where to place the slings on the vessel to lift and transport it. Stacy, on the other hand, testified that he did not recall giving such instructions.
In any event, the vessel was moved without mishap and the appurtenances, ladders, platforms, etc., were attached. The addition of so much material to the original vessel clearly increased the weight considerably, yet the increase appears to have *278 been disregarded in making the second lift.
On November 13, 1966, defendant Robert E. Baker, the head of Pittsburgh Plate Glass’ engineering department, went to the work site and “raised hell” because the vessel had not yet been erected. Later that same day the two cranes that had been used to carry the vessel from the railroad to the site of the plant, were employed to lift the vessel in preparation for its erection the following day. The slings were attached at the same points as they had been in the earlier lift, but the length of the booms on the respective cranes was different. This time the Lorraine crane had a fifty foot boom and the Koehring had ninety feet of boom. At no time prior to this lift was any calculation made by the defendant engineers of the true weight of the vessel as altered by the addition of the appurtenances. The lift was made with the Koehring crane operating at a 30-foot radius, and its operator, R. C. Hardy, stated that he felt a very slight bobbing but that this was common and nothing to be concerned about. He then “boomed up”, i. e. raised his boom, thus decreasing the radius, and thought the load to be secure. For some five to ten minutes it was, then suddening the Koehring boom collapsed, striking the deceased.
The general concensus is that the crane collapsed because it was overloaded and the main issue in my view involves a determination of where the responsibility lay to ascertain whether the crane was operating within its capacity. I cannot go along with the majority and say that the jury erred in its evident conclusion that it lay with Pittsburgh Plate Glass’ engineers, the defendants.
The evidence in general and in particular the testimony of John McGraw, III, Vice-President of Industrial Construction Company, shows that Industrial was not equipped to, and in fact did not, perform any engineering services in connection with its work. Although there are numerous allegations that various persons, including the deceased, should have been able to estimate the added weight, there is little dispute but that weight determinations are a function of engineering. The contract is clear in its provisions that engineering was to be provided by Pittsburgh Plate Glass through the defendants, and indeed no one, not even the defendants, places a different construction upon its terms. Thus there was no duty owed by McGraw to ascertain or provide the true weight of the vessel and accordingly he cannot be held liable to plaintiffs.
The defendants urge repeatedly that they would have provided information on the additional weight had they been requested to do so. Their argument, in essence, is that it was obvious that the stated figure of 92,487 lbs. was not the weight of the vessel after the appurtenances had been added thereto and that it was the responsibility of Frenzel, Canter, McGraw, and the other Industrial people to ask for the true weight and provide for it.
The majority accepts this view but I disagree with both the premise and the conclusion. The weight of 92,487 lbs. was given to Industrial as the weight of the vessel “empty”. As was aptly pointed out in the course of the trial, it was not unreasonable for the Industrial personnel to interpret this as meaning a vessel empty of the fluids that it was designed to contain. The meaning ascribed to it by the defendants, i. e. a vessel devoid of any appurtenances and incomplete of structure, is far from obvious.
If it was obvious, then it was also obvious to the defendants and it became incumbent upon them, as the only engineers on the job, to advise the Industrial personnel of their knowledge. As pointed out in the majority opinion, it was provided in the contract that:
Owner shall furnish to contractor, as promptly as is reasonably possible, additional instructions, by means of drawings or otherwise, consistent with the *279 contract documents, as may be necessary for the proper execution of the work. Contractor shall execute the work in conformity therewith and shall do no work without proper drawings and instructions from Owner.
This duty to advise of the increased weight was particularly due to the deceased, Jesse Canter, who was the foreman in charge of the lifting operation. Additionally the duty was owed by each of the defendants: Robert Baker as head of the engineering department, William L. Smith as the construction engineer, Clifford Stacy as the field engineer for the job, and Theodore Sachs as the project engineer. Each of these men was personally involved in the work, visited the site regularly, viewed how the work was being done, and had the authority to correct dangerous or improper procedures. None complied with their duty to Jesse Canter, as set out in the contract, and therefore all were guilty of negligence proximately causing the accident.
All of the defendants had knowledge of how the lift was going to be made and Clifford Stacy was present when it was actually made. No one, including all the defendants, the two crane operators, and George Frenzel, saw anything wrong with the way it was being executed. The only weight figure that had ever been made available to Jesse Canter, who had joined the job only about a week before, and after the appurtenances had been added, was 92,-487 lbs. and the bulk of the testimony is that had that been the true weight the Koehring crane would have been operating within its capacity. Under these circumstances I cannot say that the jury’s action in absolving Canter of contributory negligence constitutes manifest error.
Plaintiffs have a right of action in these proceedings under the provisions of LSA-R.S. 23:1101, which states in part:
When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.” . . . ” (emphasis supplied)
It is settled law that the receipt of workmen’s compensation benefits does not affect an employee’s right of action against a third person who is not his employer, when the third person through personal negligence subjects himself to individual liability for damages sustained by the employee. Boudreaux v. Falco, La.App., 215 So.2d 538. Included in the definition of “third person” as that term is used in LSA-R.S. 23:1101, are corporate directors, officers, agents and co-employees. Adams v. Fidelity & Cas. Co. of New York, La.App., 107 So.2d 496.
Defendants cite the cases of Adams v. Fidelity & Casualty Co. of New York, La. App., 107 So.2d 496, writs refused, Feb. 16, 1959; Daigle v. Cobb, La.App., 175 So.2d 392; Eschmann v. Moyer, 253 La. 818, 220 So.2d 86; Berry v. Aetna Casualty & Surety Company, La.App., 240 So.2d 243; Lemmons v. Zurich Insurance Company, 5 Cir., 403 F.2d 512; Chaney v. Brupbacher, La.App., 242 So.2d 627; Chabina v. Travelers Insurance Company, La. App., 251 So.2d 414; Spillers v. Northern Assurance Company of America, La.App., 254 So.2d 125, writ refused, 260 La. 288, 255 So.2d 772; Maxey v. Aetna Casualty & Surety Company, La.App., 255 So.2d 120, writ refused, 260 La. 123, 255 So.2d 351; *280 and Dulaney v. Fruge, La.App., 257 So.2d 827, writ refused 261 La. 482, 259 So.2d 921.
While the cases referred to concentrate primarily on the personal liability of executive officers to employees of their mutual corporate employer, the legal principles involved are applicable to the defendants before us, who, though not officers of Pittsburgh Plate Glass were certainly agents thereof.
Adams v. Fidelity and Casualty Company of New York, supra, contains an extensive, well reasoned discussion of the law pertaining to the subject before us. In reaching its decision the Court relied heavily upon the case of Washington v. T. Smith & Son, La.App., 68 So.2d 337, and after quoting at length therefrom, stated:
“It would appear that the Washington case in reality followed the doctrine as stated in American Jurisprudence, Vol. 13, p. 1023, § 1092, which we quote:
‘§ 1092. Negligence. As in the case of agents generally, some of the authorities, particularly the earlier ones, have attempted to work out the liability of a director or officer of a corporation for negligence resulting in the injury of a third person “including employees of the corporation” by laying down the rule that a director or officer of a corporation is liable to third persons for injuries caused by his misfeasance or malfeasance, but is not liable for such injuries, if due to non-feasance, for in such case the director or officer is neglecting a duty which he owes merely to the corporation. In the last analysis, however, the liability of a director or officer of a corporation to third persons for negligence is not a matter to be settled by a superficial terminology of the acts done as malfeasance, misfeasance, or nonfea-sance. Such a method is an attempt to consider the violation of the duty before the duty itself — that is, it is an attempt to lay down the rule that because there was a breach of duty by reason of misfeasance or malfeasance therefore there was a duty to the third person, but that if the act is one of omission or nonfeasance, therefore there was not a duty to the third person. This surface terminology has led to such confusion in the cases and to different results upon facts substantially identical. This method of determining liability has been repudiated as to agents generally by the better-reasoned authorities and the text writers, and is not the proper test as to directors and officers of corporations. ‘The fundamental and proper method of approach is to inquire whether the director, officer, or agent has failed to perform some duty which he owed to the person claiming to be aggrieved. In the determination of such liability, therefore, the questions to be decided are: (1) Was there any duty on the part of the director, officers, or agent to use care not to injure the third person involved? (2) Did the act or omission of the director, officer, or agent constitute a breach of that duty? In accordance with these inquiries, the more direct and fundamental rule, accepted in principle at least by all the authorities, is that a director, officer, or agent of a corporation is liable to third persons for injuries proximately resulting from his breach of duty to tise care not to injure such persons. Whether that breach is one of omission or commission. On the other hand, a director, officer, or agent of a corporation is not liable for injuries to third persons if he has been guilty of no act or omission causing or contributing to such injury or if he owes no duty to such third person to use care, such as where the breach of duty complained of is one owing only to the corporation.’ ” (emphasis added)
The Adams Court then went on to say:
“ . . . this case (referring to Washington) is also particularly apposite to *281 the case at bar in that it lays down the proper legal principles to be followed in testing the liability of a third party defendant under LSA-R.S. 23:1101, Sub Part E, whether he be an officer, director, or untitled co-employee of the common corporation employer, as well as the test of liability in cases where a third-party plaintiff is suing an agent, officer, a director of a corporation employer, for an alleged negligent breach of duty ‘whether that breach is one of omission or commission’ . . ” (Emphasis added)
In support of their position, defendants have referred us inter alia to three recent decisions of this court, namely: Spillers v. Northern Assurance Co. of America, 254 So.2d 125 (La.App. 3rd Cir. 1971) ; Maxey v. Aetna Cas. & Surety Co., 255 So.2d 120 (La.App. 3rd Cir. 1971) ; and Dulaney v. Fruge, 257 So.2d 827 (La.App. 3rd Cir. 1972). Since these cases emanate from this court, I will discuss each of them, with the exception of Spillers which is treated in the majority opinion.
In Maxey, supra, this Court affirmed the dismissal of plaintiff’s suit on an exception of no cause of action, but in so doing, stated:
“The only duty which an executive officer of a corporation owes to a third person, whether he be an employee of the corporation or a complete stranger, is the same duty to exercise due care not to injure him which any person owes to another. If an injury is sustained by a third party as the result of the independent negligence of the corporate officer, or as the result of a breach of the duty which that officer, as an individual, owes to the third party, then the injured third party may have a cause of action for damages against the officer personally. See LSA-C.C. Arts. 2315 et seq. Insofar as the personal liability of the corporate officer to the third party for damages is concerned, however, it is immaterial whether his breach of duty towards the third person also constitutes a breach of duty to the corporation. Sampson v. Schlutz, [La.App., 242 So.2d 363] supra; Berry v. Aetna Casualty & Surety Company, supra; Adams v. Fidelity & Casualty Company of New York, supra.
“Plaintiff alleges as the basis for his demands in the instant suit that the defendant corporate officers were negligent in several particulars. A careful examination of plaintiff’s petition convinces us, however, that each of these alleged acts of negligence, if proved, would constitute a breach of duty which the officers owed only to the corporation. We find no allegation in the petition to the effect that the defendants breached a legal duty which they, as individuals, owed to plaintiff. Under those circumstances we agree with the trial judge that the petition fails to state a cause of action.”
In Dulaney v. Fruge, supra, written by the author of this dissenting opinion, plaintiff alleged that the defendant, president of his corporate employer, had failed to provide proper safety procedures and safe equipment. However, the evidence produced was barren of any proof that defendant owed any such responsibility to the plaintiff under the circumstances of that case. The evidence failed to indicate that any formal or tacit delegation of responsibility had been delegated by the corporation to the defendant, Fruge. Dulaney further held that there had been no showing that the equipment provided by the corporate employer was, in fact, unsafe, as it was equipped with the standard accessories. Additionally, as we stated, the defendant, at the time of the accident, was out of the state and unaware that the job in question was being performed or of what equipment was being used. Nevertheless, the opinion did contain a statement, perhaps misleading, that:
“Even if defendant Fruge did fail to provide proper safety procedures and safe equipment, his failures would constitute, *282 in light of Maxey, supra, a breach of duties owed exclusively to the corporation and not to its employees.” .
Under certain circumstances, the failure of an officer or agent to furnish safe equipment may violate a duty owed to both his employer and third parties, and therefore the statement quoted above from Dulaney applied to the facts of that case, but was in no wise intended for general application in all cases of this nature.
Had the plaintiff in Fruge, supra, shown that the defendant-president had been delegated the responsibility to provide him with certain safe equipment, or that he otherwise personally undertook that obligation and failed to perform it prudently, then plaintiff would have presented a basis for recovery, assuming, which we could not do in Dulaney v. Fruge, that the plaintiff himself was free of any contributory negligence.
Thus, applying the foregoing principles to the facts at hand, the key element is whether or not Pittsburgh Plate Glass had delegated to its defendant-employees duties which encompassed acts to protect the decedent from the harm that he suffered; or, did defendants by their actions ond overall responsibilities on the job in question undertake a duty or responsibility to protect others working on the premises, including the decedent.
I find that there was an express delegation by Pittsburgh Plate Glass to its defendant-employees to protect decedent. The contract between Pittsburgh and Industrial clearly provided that engineering services were the responsibility of Pittsburgh’s engineering department, of which defendants were members, stating that, “The Owner’s Engineering Department will furnish all Drawings, Bills of Material, and Specifications.” Defendants were directly and personally concerned with the job in question and accordingly, had the responsibility to provide the correct weights on the vessel, which they failed to do. I am not of the opinion that it was incumbent on the employees of Industrial to ask for further information, under the circumstances, but rather opine that they were justified in relying on the information that they already had. The record is replete with evidence that the crane collapsed because it was overloaded and that the lift would not have been made had the true weight been known and considered in a determination of the lifting capacity of the crane. I consider the failure of defendants to provide these engineering functions to be negligence which proximately contributed to the accident and for which they are personally liable unto plaintiffs.
Of course, there is no dispute as to the liability of defendant, Travelers Insurance Company, as its coverage of the individual defendants was admitted.
Plaintiff argues that the trial judge erred in finding George E. Frenzel negligent and in reducing the jury verdict by one-fifth. Because I concur in the latter objection, I see no need to dwell on the former as does the majority.
I note that Frenzel was not sued individually by plaintiffs nor was he brought into the action through a cross claim on the part of defendants. Although it was alleged by plaintiffs that Bituminous Casualty Corporation was the liability insuror of Fren-zel, and Bituminous was sued by plaintiffs, no showing was ever made by anyone that the allegation was correct. Without some proof that Frenzel was in fact the insured of Bituminous we certainly cannot say that he was solidarily liable with Bituminous. Under these circumstances it would run contrary to logic and to the legal principles of solidary obligations to hold Frenzel solidarily liable with the case defendants. To show otherwise was incumbent upon the defendants. Harvey v. Travelers Insurance Company, La.App., 163 So.2d 915.
The solidary liability of Frenzel not having been established, the trial judge erred as a matter of law in diminishing the jury’s award to plaintiffs by one-fifth. Hall v. State, Through Department of Highways, La.App., 213 So.2d 169.
*283 The last specification of error is defendant’s allegation that the quantum of damages is excessive. I find no merit in their contention.
Mr. Canter, had, according to the life expectancy tables introduced into evidence, a life expectancy of 29.1 years at the time of his death. He left a widow, and eight children whose ages at the time were 20, 19, 16, 15, 12, 8, 5, and one was as yet unborn. His income tax returns for the years 1965 and 1966 show that he earned $5,419.-38 and $7,195.15 respectively. He lived for several minutes after the accident, and the funeral expenses amounted to $1,057.47.
His widow and second son, James A. Canter, established that the deceased was a conscientious and devoted family man, whose entire earnings went for the needs of his family. It was his habit to take the family riding, picnicking, fishing, etc., and for eight years he coached a little league baseball team that included some of his sons. Not having much formal education himself, it was his ambition that all of his children should finish school. In short, the man lived and worked for his family, and their loss of him justifies the awards made by the jury, which were as follows:
To Mrs. Canter individually, who itemized her damages as loss of future support; deprivation of the companionship, security, love, and affection of her husband; grief, mental anguish, and distress; one-half of the damages due for the physical pain and suffering of her deceased husband; and funeral expenses, the sum of $150,000.00.
To Mrs. Canter on behalf of her minor children, each of whom itemized their damages as loss of future support, deprivation of the companionship, love, and affection of his or her father; grief, mental anguish, distress; and one-sixteenth of the damages due for the physical pain and suffering of the deceased father, the awards were: On behalf of Jody Allen, the sum of $19,000.00; on behalf of Tony Joe, the sum of $17,000.00; on behalf of Michael Roy, the sum of $16,000.00; on behalf of Gail Ellen, the sum of $13,000.00; and on behalf of Paul David, the sum of $12,000.00.
The three children who had attained the age of majority at the time of the trial, itemized their damages as deprivation of the companionship, love and affection of their father; grief, mental anguish, and distress; one-sixteenth each of the damages due for the physical pain and suffering of their deceased father; and, for the two who had not been emancipated, loss of future support. Their awards were $4,000.00 to Mary A. Canter, $2,000.00 to James A. Canter, and $1,000.00 to Jesse C. Canter. While these three awards appear to be rather low, and the last of them is certainly so, I do not think they should be disturbed because plaintiffs did not question their adequacy either by appeal or answer to the appeal of defendants, nor did they argue it in their brief. Ponthieux v. Lindsay, La.App., 216 So.2d 407, affirmed at 254 La. 647, 226 So.2d 482.
For the above and foregoing reasons it is my opinion that the judgment of the district court should be amended so as to reinstate the original awards of the jury as herein-above set out, aggregating $234,000.00, and with legal interest thereon from date of judicial demand until paid, and as thus amended should be affirmed.
Accordingly, I respectfully dissent.