411 So.2d 511 (1982)
Franklin L. WHITE
v.
C F INDUSTRIES, INC., et al.
No. 14533.
Court of Appeal of Louisiana, First Circuit.
March 2, 1982.
Writ Denied April 21, 1982.
*512 Walton J. Barnes, S. Dwayne Broussard, Baton Rouge, for plaintiff & appellant.
Gerald L. Walter, Jr., Vincent P. Fornias, Baton Rouge, for defendants & appellees.
Before ELLIS, LOTTINGER and PONDER, JJ.
LOTTINGER, Judge.
This is an "executive officer" suit brought by Franklin L. White against four officers of White's statutory employer, C F Industries, Inc. The plaintiff was injured when some part of a brick "tunnel" within a furnace collapsed beneath him, causing his fall. The "tunnel" was used by plaintiff and his co-employees as a scaffold for cleaning tall furnace pipes. The defendants herein, Miller Dial, H. M. Epps, D. J. Esnault and David Miller were respectively the general manager, maintenance manager, and maintenance engineers at the C F Industries plant near Donaldsonville, Louisiana, at the time of the accident. The suit against these defendants alleged that the defendants were delegated by C F Industries the duty of providing plaintiff with a safe place to work, and that this duty was breached by the defendants' condoning the use of plywood-overlaid brick "tunnels" as scaffolding for cleaning the furnace.[1] From adverse judgment in favor of the four defendants, plaintiff has appealed.[2]

THE FACTS
The plaintiff was injured on February 7, 1974 at the C F Industries' plant near Donaldsonville, Louisiana. He was 37 years old at the time of the accident and was employed by Petro Corporation, a division of Barnard & Burk. Petro contracted with C F to clean a furnace during a "turnaround," *513 i.e., a period when the plant was shut down for maintenance. C F was responsible for supplying Petro employees with whatever scaffolding was necessary to complete the job.
The plaintiff was cleaning furnace pipes with a circular brush at the time of the accident. This task entailed standing atop brick "tunnels" which ran through the furnace in parallel rows. Each "tunnel" had two side walls composed of bricks and held together with mortar. The bricks in the side walls were of a special type used in furnaces but were an ordinary size. Riding atop the two side walls and spanning the gap between were larger blocks of a similar but distinguishable material. These blocks composed the roof of the "tunnels." Over the roof blocks were placed sheets of three-fourths inch plywood. All Petro employees on the job were warned repeatedly to walk only on the plywood sheets and not to walk directly on the concrete blocks. This warning was given because the blocks tended to become brittle due to the high heat of the furnace during operations. The plywood sheets were used to help evenly distribute the weight of the workers over the "tunnel" and prevent a block from collapsing. For the same reason, Petro employees were instructed to avoid walking in the center of the plywood sheets and to stay near the sides whenever possible.
At the time of the accident, plaintiff was standing atop a brick "tunnel" and attaching a circular brush to a nearby furnace pipe when he fell suddenly, landing on the furnace floor some five or six feet below. Conflicting testimony was adduced at trial as to whether plaintiff stood on the plywood as instructed or stood directly on the concrete roof blocks at the time of his fall. As a result of the fall, plaintiff injured his back, necessitating hospitalization. He was later diagnosed as having a herniated lumbar disc and eventually underwent a laminectomy.
To plaintiff's suit, defendants answered with a general denial, and specifically pleaded the affirmative defenses of contributory negligence and assumption of risk. By the time of trial, the only defendants remaining were the managers and engineers of C F Industries.[3] After trial on the merits, judgment was rendered in favor of the four remaining defendants, and plaintiff's suit was dismissed. No written reasons were assigned by the trial judge. The plaintiff timely perfected a devolutive appeal to this court.

SPECIFICATIONS OF ERROR
Plaintiff-appellant contends the trial judge erred in:
1. finding that C F Industries, Inc., owed no duty to the plaintiff, the breach of which caused his damages;
2. finding that the duty owed by C F Industries, Inc., to the plaintiff was not delegated to the individual defendants;
3. finding that the individual defendants did not breach their duty to the plaintiff through their personal fault;
4. failing to apply the doctrine of res ipsa loquitur under the exceptional facts of this case; and
5. failing to award damages to the plaintiff in accordance with the evidence adduced at trial.
The criteria for imposing individual tort liability on a co-employee, agent, or officer of a plaintiff's employer or principal were set forth in Canter v. Koehring Company, 283 So.2d 716 at 721 (La.1973):
"1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
"2. This duty is delegated by the principal or employer to the defendant.
"3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the *514 same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
"4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm."
Where the trial judge does not assign oral or written reasons for judgment, the reviewing court is required to review the record in its entirety to determine whether or not the result reached by the trier of fact was in itself manifestly erroneous. Aetna Casualty and Surety Company v. Continental Insurance Company, 308 So.2d 489, 491 (La.App. 1st Cir. 1975).

I
Plaintiff-appellant argues that the first criterion of Canter "executive officer" liability was met in that C F Industries owed plaintiff a statutory duty to furnish him a safe working place, under La.R.S. 23:13.[4]
The defendants contend that no duty was owed by C F to White under La.R.S. 23:13, inasmuch as the statute refers only to employers and White was an employee of Petro Corporation, not C F Industries. However, in Canter, supra, liability vested with the executive officers of the decedent's principal. Canter clearly illustrates that the duty to provide a safe place to work applies to principals as well as employers. Indeed, the fact that C F was dismissed from the tort action on the grounds that a worker's exclusive remedy against a principal (or statutory employer) is in compensation indicates that the principal is tantamount to an actual employer vis-a-vis the injured workman. Thus, C F Industries owed plaintiff a duty to provide him a safe working place, although C F was not plaintiff's direct employer.

II
White argues that the duty to provide a safe working place was delegated by C F Industries to the four defendants, Miller Dial, H. M. Epps, D. J. Esnault, and David Miller. Trial testimony indicated that the defendants did not directly supervise the work of White and other Petro employees. This job was left solely to Petro supervisors. Thus, the defendants argue, C F contractually delegated to Petro the duty to provide a safe working place. However, this argument overlooks the fact that the contract between C F and Petro stated that C F would provide all equipment necessary for the work except for certain enumerated items which would be provided by Petro. Scaffolding was not among the enumerated items. Additionally, C F Industries apparently was the party who adopted the practice of using brick "tunnels," overlaid with plywood sheets, as *515 a means of access to tall furnace pipes. If this practice created an unreasonable risk of harm to White, then the fact that Petro supervised its own employees is wholly irrelevant. Simply because Petro supervisors were on the job did not negate C F's duty to provide a safe working place. Thus, we must examine the job functions and responsibilities of the four defendants to determine whether each was delegated C F's duty to provide a safe place to work to contractors' employees.
Defendant Miller Dial was the general plant manager in Donaldsonville at the time of the accident. His duties included the overall management of the plant, including the manufacture of anhydrous ammonia as well as the sales and shipping of same. Dial was not personally responsible for overseeing maintenance performed at C F, although he admitted that he was certainly empowered to halt any unsafe maintenance practice that might be brought to his attention. Dial testified that the direction of maintenance work and the adoption of maintenance procedures at C F was delegated to maintenance personnel. Although as general plant manager Dial was delegated C F's duty to provide a safe working place, we find that this duty was in turn delegated to subordinates. Under Canter, Dial cannot be held liable unless he personally knew or should have known of the non-performance or mal-performance of the subordinates in carrying out the delegated duty, and nonetheless failed to cure the risk of harm.
Defendants H. M. Epps, David Miller, and D. J. Esnault were the maintenance manager and maintenance engineers at the time of the accident. Epps as maintenance manager had overall administrative responsibility for all maintenance work conducted at the Donaldsonville facility. Epps was responsible to Miller Dial, the general manager, for the maintenance and operation of the plant. His job was primarily desk work, but Epps occasionally made tours of the plant to determine how work was progressing. Epps testified that he was familiar with the practice of using brick "tunnels" and plywood sheets as an access to furnace pipes. We find that Epps was delegated C F's duty to provide contractor's employees such as White a safe place to work.
David Miller and D. J. Esnault were the C F employees who were closest to the work being done. Their job as maintenance engineers entailed daily tours and inspections of the plant to make sure that maintenance work was proceeding safely and on schedule. Miller testified that he and Esnault had the authority to correct any work practice which they deemed unsafe, and that such corrections had actually been made in the past. Miller attended daily meetings between C F and Petro supervisors. These meetings dealt with work planning and work review. Esnault missed these afternoon meetings because his was the night shift. Esnault was on duty when White was injured, although he was not in the furnace at the time. We find that Miller and Esnault were delegated C F's duty to provide White a safe place to work.

III
The most important inquiry in this case, which is dispositive of the result, is whether the duty to provide a safe place to work was breached through the personal negligence of the four defendants.
The plaintiff sought to prove that using the "tunnels" overlayed with plywood as scaffolding was inherently dangerous, creating an unreasonable risk of harm. Plaintiff further asserted that the defendants negligently failed to adopt a safer alternative, even though the defendants had authority to make such a change.
The defendants testified that an accident such as plaintiff's had never occurred during the eight years that the furnace was operated, even though the same method of cleaning the furnace was used each "turnaround." During each turnaround, C F contracted with a refractory specialist to inspect the brickwork in the furnace. The refractory contractor replaced loose bricks, checked for cracked top blocks, and replaced *516 whatever mortar was necessary. This inspection occurred simultaneously with the cleanup of the furnace during some turnarounds. During other turnarounds, the inspection was made before Petro employees cleaned the furnace.
Dr. Jerry Householder, a structural engineer, testified as an expert witness on behalf of the plaintiff. Dr. Householder opined that the practice of using "tunnels" overlaid with plywood as scaffold was inherently unsafe, in that three-fourths inch plywood would be required to bend greatly to distribute a worker's weight. The amount of bend required was so great that the plywood would do little or nothing to prevent a block from collapsing. Dr. Householder testified that an accident such as plaintiff's was inevitable, given the method used.[5] He suggested that an alternative method was to build a normal scaffold which would straddle the entire "tunnel" without resting its weight upon the "tunnel."
However, Dr. Householder testified that his conclusions were based on one inspection of the furnace (occurring four years after the accident) and his own theoretical computations. Dr. Householder testified that it was commonplace for engineering methods to be established on a trial-and-error basis. He noted that C F used the plywood sheets for years without a single accident, and testified that it was common engineering practice to adhere to a method which appeared reasonable until the same was shown to be unsafe, and only then to reassess.[6]
As stated above, conflicting testimony was introduced as to whether plaintiff was standing on the plywood or on the bare blocks when he fell. Even assuming arguendo that plaintiff stood exactly where he was instructed to stand, the fact that he fell does not of itself vest liability with the defendants. In Eschmann v. Moyer, 253 La. 818, 220 So.2d 86 (1969) cert. den. 396 U.S. 845, 90 S.Ct. 97, 24 L.Ed.2d 95, the Supreme Court absolved a corporate officer from liability upon finding that he had properly discharged his own corporate duties and had no personal, actual or constructive, knowledge of an alleged premise defect at the time of the accident. In the instant case, the defendants did not devise but condoned the method of using the plywood and "tunnels" as scaffolding. Because no accident had occurred in the past, the defendants had no actual knowledge of danger to those standing on the plywood as instructed. Constructive knowledge cannot be imputed to the defendants, since Dr. Householder testified that only an expert would have enough knowledge of the structural properties of the plywood and refractory bricks to recognize a potential hazard. Reasonable maintenance of the furnace was carried on during each and every turnaround by a refractory specialist. There was no suggestion at trial that any of the defendants was derelict in carrying out the corporate and industrial duties assigned to him. Thus, even assuming that the plaintiff was not contributorily negligent, the plaintiff did not meet his burden of showing that his fall was caused by the personal fault of any of the defendants.
The plaintiff urges that the doctrine of res ipsa loquitur should have been applied to the factual circumstances presented. The application of res ipsa loquitur creates a presumption of negligence, which the defendants are required to rebut. However, for res ipsa loquitur to apply, the accident must be one that ordinarily would not occur in the absence of negligence of *517 the defendant.[7] The accident in question clearly could have occurred without the defendants' negligence, in that a premise defect might have caused the accident even though none of the defendants had actual or constructive knowledge of the defect. Additionally, the negligence of the refractory contractor might have caused the accident by failing to observe and replace a cracked roof block. Finally, the evidence suggests that the plaintiff might have caused his own accident by walking directly over the bare blocks, contrary to instructions. Res ipsa loquitur cannot apply to the case at bar because the negligence of the defendants was not shown to be the likely cause of the accident. Even were we to apply res ipsa loquitur, the defendants have rebutted the presumption by adducing evidence showing that they were free from personal fault.

IV
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error, or that the trial court finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, supra. After a thorough and total review of the record, we are unable to say that the decision handed down by the trier of fact was either manifestly erroneous or clearly wrong.
In light of our holding that the four "executive officer" defendants did not breach a duty owed plaintiff through their personal fault, we pretermit any discussion of the plaintiff's alleged contributory negligence and/or assumption of the risk and also pretermit any discussion of the amount of damages plaintiff suffered.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Franklin L. White.
AFFIRMED.
NOTES
[1] The accident which caused plaintiff's injuries occurred prior to the 1976 Amendments to La. R.S. 23:1032, the exclusive remedy provision. Thus, the plaintiff in the instant case may recover for damages caused by negligence of an "executive officer."
[2] C F Industries was originally made a party defendant, but was granted summary judgment on the grounds that it was a "principal" or "statutory employer" under La.R.S. 23:1061, and that plaintiff's exclusive remedy against C F was in workman's compensation, La.R.S. 23:1032. Several officers and supervisors of Petro Corporation, plaintiff's immediate employer, were originally made defendants, but were released in an out-of-court settlement prior to trial.
[3] See footnote 2, supra.
[4] La.R.S. 23:13 states:

"Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations."
[5] Dr. Householder further opined that OSHA regulations had been violated, inasmuch as he doubted that the scaffolding used could support four times the weight intended to be placed upon it. However, as we stated in Greene v. Wright, 365 So.2d 551 (La.App. 1st Cir. 1978), MESA regulations may be cogent in establishing a standard of care but violation thereof is not of itself determinative of negligence.
[6] Dr. Householder gave a specific example of this methodology. He cited the American Institute of Steel Construction, which had to recall newly-promulgated codes after a stress collapse with ensuing fatalities which occurred because of phenomena never before observed.
[7] See generally, Malone, "Res Ipsa loquitur and Proof by Inference-A Discussion of the Louisiana Cases," 4 La.Law Rev. 70 (1941).